UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LEONARD LOGAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 24-cv-03897 |
| | ) | |
| v. | ) | Hon. Franklin U. Valderrama |
| | ) | District Judge |
| | ) | |
| CITY OF CHICAGO, *et al.,* | ) | Hon. Young B. Kim |
| | ) | Magistrate Judge |
| Defendants. | ) | |
| | ) | |

**JOINT STATUS REPORT**

Pursuant to this Court's Order, Dkt. 83, the parties submit this joint status report:

I. **Completed Discovery**

The parties exchanged initial disclosures by the Court's October 25, 2024 deadline and served requests for production and interrogatories before November 8, 2024. The parties then responded to those requests, produced responsive documents, and met and conferred about any outstanding issues in a timely fashion. Pursuant to this Court's Order, Dkt. 83, the parties now identify the discovery issues that remain.

II. **Plaintiff's Discovery Requests to Defendants**

Plaintiff issued discovery requests, including requests for production and interrogatories, to Defendants on August 30, 2024. After Defendants responded to these requests, the parties met on November 22, 2024, to discuss the parties' positions on various issues. The parties reached impasse on one issue: Defendants' position that they would not produce any discovery related to any criminal investigation of Defendant Evans.

### A. Investigations into Defendant Evans

Plaintiff's discovery requests specifically sought information related to any criminal investigation into Defendant Evans, including into his use of excessive force against an arrestee. *See, for example,* Ex. 1 (Plaintiff's Requests for Production) Nos. 10, 59. Plaintiff's position is that discovery into the criminal investigation of Defendant Evans is centrally relevant to this lawsuit because Plaintiff had, prior to his wrongful conviction, filed a civil lawsuit against Defendant Evans alleging excessive force. Plaintiff alleges that Defendant Evans may have conspired to frame him for the Jones murder as retaliation for that civil lawsuit. In addition, previous investigations into inappropriate official conduct by Defendant Evans are directly relevant to Plaintiff's claims here—that Defendant Evans committed misconduct and framed him for a murder he did not commit—along with Plaintiff's 404(b) evidence. Plaintiff would invite briefing on the issue to provide additional context and case law should the Court deem it appropriate.

The Defendant Officers' position is that documents related to a criminal investigation into Defendant Evans (for which he was acquitted) are not relevant to the claims and defenses in this litigation and not proportional to the needs of the case. Contrary to Plaintiff's claim, Defendant Evans did not "conspire to frame" Plaintiff for the Jones murder "as retaliation for" Plaintiff's civil lawsuit against Defendant Evans. First, Plaintiff was arrested in 1996 before Plaintiff filed his 1997 civil lawsuit against Defendant Evans. *See Logan v. Evans*, 97 CV 08816, Dkt. #1 (N.D. Ill.). Accordingly, Defendant Evans could not have retaliated against Plaintiff in 1996 for a lawsuit against him that was not filed until 1997. While Plaintiff appears to have filed an internal CPD complaint against Defendant Evans prior to Plaintiff's 1996 arrest, there is no indication that Defendant Evans was aware of Plaintiff's internal CPD complaint before Plaintiff's 1997 arrest for murder. Second, Defendant Evans had a very small role in Plaintiff's homicide investigation,

which was led by other Defendant Officers. For instance, Defendant Evans did not interrogate (or take any handwritten statement of) any witness in Plaintiff's homicide investigation and did not arrest, or cause arrest, of Plaintiff. Third, the criminal investigation into Defendant Evans, which is the subject of the parties' discovery dispute, related to Defendant Evans' conduct in 2013, nearly 16 years after Plaintiff was investigated and arrested for murder (1997) and 13 years after Plaintiff's criminal conviction for murder (2000).

Plaintiff argues that Defendant Evans' 2013 criminal investigation involved claims of excessive force, but Defendant Evans committed no force against Plaintiff during the 1997 murder investigation. Indeed, Defendant Evans had no interaction with Plaintiff relating to Plaintiff's 1997 homicide investigation and/or arrest. Rather, Plaintiff attempts to link the 2013 incident involving Defendant Evans to Plaintiff's case by arguing that *prior* to Plaintiff's 1997 murder investigation, Plaintiff filed a complaint against Defendant Evans for excessive force. However, the fact that Plaintiff filed an internal CPD excessive force complaint against Defendant Evans in the winter of 1996 before Plaintiff's 1997 murder investigation does not make an entirely unrelated incident nearly 20 years later relevant or proportional to the needs of the case.

### B. Additional Document Discovery

Plaintiff also notes that additional discovery issues may arise as Plaintiff becomes aware of additional relevant and responsive documents. For instance, Plaintiff routinely requests specific IR jackets from the City during the pendency of fact discovery as new information comes to light. Plaintiff has discussed these potential issues with Defendants and is optimistic that the parties will be able to resolve those issues amongst themselves. The City will provide Plaintiff with IR jackets upon reasonable terms, including Plaintiff providing targeted names of specific individuals who must be deposed in this case, along with other necessary information in Plaintiff's possession,

needed to order IR jackets. Other such examples may include juvenile records for key individuals and protocols to search for electronically stored information. The parties will attempt to resolve any issues that may arise and there is no issue ripe for court intervention at this time.

### C. *Monell* Discovery and 404(b) Evidence

Discovery is still in its early stages and, as such, the parties are not properly positioned to have substantive discussions pertaining to Plaintiff's *Monell* claims, and whether *Monell* discovery will be required in this case beyond a 30(b)(6) deposition. These future discussions, once finalized, will help instruct the parties' discussions about the scope of FRE 404(b) evidence Plaintiff intends to use against certain Individual Defendants which, in turn, will require supplemental disclosures by Defendant Officers as to 404(b) evidence. The parties believe they can work on these issues as discovery progresses and there are no issues ripe for court intervention at this time.

### III. Defendant Rowan's Interrogatories to Plaintiff

As an initial matter, Plaintiff has not provided his verification for his supplemental interrogatory answers. Defendant Officers requested that Plaintiff provide a verification within seven days of the filing of this JSR, and Plaintiff agreed to do so.

#### A. Interrogatories 4-14

Defendant Rowan asked a series of interrogatories requesting Plaintiff to identity the conduct that he attributes to each Defendant Officer that led to his arrest, prosecution, and conviction and the basis for the claim. (Def. Rowan's Int. to Pl. ¶¶ 4-14, attached hereto as Exhibit 2.) The purpose behind this interrogatory was to isolate what actions were done by each Defendant in order to determine whether the Defendants had the requisite personal involvement for the constitutional claims Plaintiff has alleged. Plaintiff agreed to supplement these responses and produced the supplemental answers on January 29, 2025. Defendants believe that Plaintiff's

4

response, although lengthy, does not provide the requisite information.[1] (Pl.'s Supp. Int. Ans. ¶¶ 4-14, attached hereto as Exhibit 3.)

Plaintiff's answer for each Defendant Officer is roughly the same. First, Plaintiff refers the Defendants to his complaint, but that is an inappropriate answer. *See Iglesias v. Guevara, et. al.*, 19-cv-6508, dkt. 174 at 5-6 (N.D. Ill. Jan. 3, 2022) (plaintiff may not answer requests for specific evidence supporting specific claims by generally describing the complaint's allegations or his theory of liability in broad strokes). Even if this was appropriate, Plaintiff's complaint in which he generally groups the Defendants together does not provide the Defendants with the level of detail necessary for purposes of personal involvement. Second, Plaintiff's decision to answer these interrogatories by broadly stating that each Defendant was part of a conspiracy to fabricate evidence, hide evidence, and present false evidence to the authorities merely describes Plaintiff's causes of actions. (Ex. 3, Pl.'s Supp. Int. Ans. at ¶¶ 4-14.) If Plaintiff believes each Defendant fabricated evidence, hid evidence, or presented false evidence, Plaintiff should answer with specifics and state which officer fabricated or hid what evidence. Third, Plaintiff answered for each Defendant that they subjected a witness, Latonya Payton, to psychological abuse, but Plaintiff did not inform the Defendants the basis for that part of the answer. (*Id.*) This is important in light of Ms. Payton's prior testimony where she was unable to identify any of the officers that questioned her. Finally, in the second to last paragraph of each answer, Plaintiff attempts to provide more detail, but his answer is still far too broad. For example, in his answer describing Defendant Almazan's conduct he states that Defendant Almazan, "along with other Defendant Officers, also

---

[1] Defendant Officers recognize that these interrogatories will likely need to be supplemented near the close of fact discovery as depositions proceed and the parties gather more information. However, it is the Defendants position that more specificity as to what each officer did is necessary in order for the Defendants to understand what each officer supposedly did in order to focus on the relevant conduct, if any, during oral discovery. Of note, the parties did agree that setting a date toward the end of discovery for amended responses to contention interrogatories would be appropriate.

fabricated witnesses' purported identification of Plaintiff…." (*Id*. at ¶ 5.) Again, Plaintiff should be required to identify who the witness is and identify what other Defendant Officers fabricated the identification with Almazan, and how it was fabricated.

Plaintiff's position is that he has provided detailed and fulsome answers in response to Defendant Officers' contention interrogatories. He has included individualized allegations for each Individual Defendant in line with his discovery obligations and reflecting his good-faith basis for pleading such behavior in his Complaint. It is unclear what additional level of specificity Defendants are still seeking—particularly at this early stage of discovery when Defendants are better positioned to know the exact misconduct that occurred—or if Defendants are seeking to invade the work-product doctrine and get every piece of Plaintiff's legal theory at this stage of the case. Regardless, Plaintiff believes his answers to be fulsome and meet his discovery obligations. Plaintiff would also invite further briefing on the matter should the Court deem it appropriate.

**B.      Interrogatories 16 & 21**

Interrogatory 16 requests Plaintiff identify the specific pieces of evidence that he claims the Defendant Officers fabricated. (Ex. 2, Def. Rowan's Int. ¶ 16.) Likewise, Interrogatory 21 requests Plaintiff to identify the specific pieces of exculpatory evidence that he claims was withheld from him prior to his criminal trial. (*Id*. at ¶ 21.) These interrogatories go directly to Plaintiff's due process fabrication of evidence and *Brady* claims.

Similar to his answers to Interrogatories 4-14, Plaintiff answers in broad strokes, but not the specifics that is required. For example, in his Supplemental Answer to Interrogatory 16, Plaintiff states that police reports and witness statements were fabricated, but fails to disclose which police reports or witness statements he is referring to. (Ex. 3; Pl.'s Supp. Ans. ¶ 16.) Similarly, in his supplemental answer to Interrogatory 21, Plaintiff answers that the Defendants

suppressed their fabrication of other witness statements as well as their exculpatory statements, but does not identify which witnesses or statements he is referring to. (*Id*. at ¶ 21.) Plaintiff here should be required to respond with specifics of what evidence was fabricated and what evidence was withheld.

Plaintiff's position is the same as to Defendant Rowan's Interrogatory Nos. 4-14. Plaintiff believes that he has provided detailed and fulsome answers in response to Defendant Officers' contention interrogatories. He has included individualized allegations for each Individual Defendant and the evidence that was fabricated or suppressed in line with his discovery obligations and reflecting his good-faith basis for pleading such behavior in his Complaint. It is unclear what additional level of specificity Defendants are still seeking—particularly at this early stage of discovery when Defendants are better positioned to know the exact misconduct that occurred—or if Defendants are seeking to invade the work-product doctrine and get every piece of Plaintiff's legal theory at this stage of the case. Regardless, Plaintiff believes his answers to be fulsome and meet his discovery obligations. Plaintiff would also invite further briefing on the matter should the Court deem it appropriate.

### D. Interrogatory 23

This interrogatory requests Plaintiff to identify all criminal activity he has engaged in since his murder conviction was vacated. In his Supplemental Response, Plaintiff answered that he was "convicted of a drug offense in Iowa in 2023." (Ex. 3, Pl.'s Supp. Ans. ¶ 23.) First, this answer is incomplete as it does not describe the activity engaged in or name any other person who was engaged in this drug offense with Plaintiff. Second, Plaintiff's answer is incomplete because the interrogatory is not asking for only convictions, but *any* type of criminal activity, irrespective of whether the activity resulted in an arrest or conviction. Plaintiff's objections are without merit.

The information is relevant to Plaintiff's purported damages. Plaintiff is claiming severe emotional and mental damages. Plaintiff stated in his Rule 26(a)(1) Disclosures that he "suffered and continues to suffer…emotional pain, psychological damage, anguish, humiliation, destruction of his reputation…disruption of…relationships…." (Pl.'s R. 26(a)(1) Disc. p. 8, attached hereto as Ex. 4.) Plaintiff's claim for damages based on emotional and psychological pain, loss of reputation, humiliation, and loss of relationships put any additional criminal activity he engaged in at issue. *See Cobige v. City of Chicago*, 651 F.3d 780, 784 (7th Cir. 2011) (decedent's drug addiction and criminal history relevant to rebut the plaintiff's claims of emotional damage and loss of familial relationship); *In re: Watts Coordinated Pretrial Proceedings*, 2020 WL 7398789, *5 (N.D. Ill. Dec. 17, 2020) (holding that defendants could question and the plaintiffs were required to answer deposition questions about their uncharged criminal activity during depositions).

      Plaintiff also objects because he claims the response would be inadmissible a trial. (Ex. 3, Pl's Supp. Resp. at ¶ 23.) However, Plaintiff's belief on what will be admissible at a future trial is not a valid reason to prevent discovery in an area. As Judge Finnigan stated in *Watts*, the district judge must make determinations on the admissibility of evidence "after the parties identify the 'evidence' they seek to admit and summarize the Plaintiff's specific testimony concerning the nature, source, and duration of his…damages." *In re: Watts*, 2020 WL 7398789, *5. If Plaintiff can refuse to answer this interrogatory, Defendants would never get the discovery and would have "no opportunity to argue admissibility before the district judge." *Id*.

      Plaintiff's objection that the interrogatory "lacks any reasonable temporal scope" is likewise misplaced. (Ex. 3, Pl.'s Supp. Resp. at ¶ 23.) The interrogatory specifically limits the temporal scope to the time period after Plaintiff's conviction was vacated to the present which is a reasonable time period.

Plaintiff's position is that Defendants' characterization of Plaintiff's response as him "refus[ing] to answer this interrogatory" is inaccurate. Plaintiff stands on the objections he made, including the objection that the interrogatory is vague in that it provides no definition for "criminal activity." Plaintiff has attempted to answer to the best of his knowledge by providing a supplemental response, after meeting and conferring with Defendants on the interrogatory, that he was convicted of a drug offense in Iowa in 2023. It is not clear what else Defendants are seeking outside of that conviction. It is also unclear how any subsequent conviction after being wrongfully incarcerated for over 22 years and suffering severe physical, emotional, and mental turmoil somehow rebuts Plaintiff's damages. Regardless, should the Court deem it appropriate, Plaintiff is happy to further brief the issue.

**IV.     Defendant Sinson's Interrogatories #1 and #2 to Plaintiff**

A. <u>Defendant Sinson's position</u>

Sinson takes issue with Plaintiff's answers to his first and second interrogatories, which consist of narratives that essentially reiterate the allegations in his complaint and fail to answer the interrogatories (Ex. 5). This tactic is not new for Plaintiff's counsel, and other Judges in this District have ordered them to amend their answers. *See e.g.*, *Flores v. Guevara*, No. 23 C 1736, 2024 U.S. Dist. LEXIS 166268 (N.D. Ill. Sep. 16, 2024) (Cole, J.); *Iglesias v. Guevara, et al.*, No. 19-CV-6508, Dkt. 174 (N.D. Ill. Jan. 3, 2022) (Valdez, J.).

Sinson's interrogatories are straightforward requests asking Plaintiff for the factual basis of his factual allegations against Sinson. His first interrogatory asks for the evidence supporting his allegation that Sinson continued interrogating the key non-party witness, Laytona Payton, and knowingly coerced her into signing a fabricated statement inculpating Plaintiff. (Ex. 5 at 1.) The second interrogatory asks Plaintiff to describe the "tactics" Sinson allegedly employed that led to

9

a false identification of Plaintiff as the shooter. (*Id*. at 5.) Plaintiff initially responds with boilerplate objections, but principally argues that these are contention interrogatories, which he does not need to answer at the outset of discovery. (*Id*. at 1-2, 5.) Plaintiff is mistaken.

This is not the outset of discovery, especially not for Plaintiff's counsel. They have represented Plaintiff in his post-conviction matters since approximately 2009 through the Exoneration Project, including Jon Loevy and Tara Thompson whom are attorneys of record in this case. Those post-conviction matters involved two separate evidentiary hearings, which pre-date the instant case. Then, in August 2024, Plaintiff's counsel served Payton with a subpoena for her deposition and produced 10,875 pages in this case, a production that now totals 13,981. This cannot be described accurately as the "outset of discovery" for Plaintiff's counsel. Courts nonetheless have the discretion to allow contention interrogatories before discovery is complete. *Flores*, No. 23 C 1736, 2024 U.S. Dist. LEXIS 166268, at *6.

Notwithstanding, Plaintiff answers the interrogatories, starting with the following: "Plaintiff responds that he has prepared an extensive amended complaint that alleges in detail how each of the Defendants, including Defendant Sinson, acted . . ." (Ex. 5, at 2 and 6.) Plaintiff answers further by paraphrasing his allegations. (*Id*. at 2-4, 6-8.)

However, "[t]hat's not allowed. Interrogatory responses are supposed to stand on their own." *Flores*, No. 23 C 1736, 2024 U.S. Dist. LEXIS 166268, at *7-8. "Allegations in a Complaint are not evidence." *Id*. at *8. Instead, these interrogatories "ask specific questions and merit specific answers, not cross references and rambling narratives." *Id*. Indeed, "[t]he entire purpose of interrogatories is to get opposing parties to identify a specific subset of evidentiary support for their claims and defenses." *Flores*, No. 23 C 1736, 2024 U.S. Dist. LEXIS 166268, at *9 (quoting, *Iglesias*, No. 19-CV-06508, Dkt. 174 at 5). "If plaintiff doesn't know an answer, he should simply

10

say so. If the plaintiff doesn't have any evidence regarding an answer at this point, he should simply say so. If the evidence is circumstantial, he should say that and list that evidence." *Id*.

What's worse is that by re-asserting Plaintiff's allegations, which suffer from ambiguous group pleading, Plaintiff's answers to the interrogatories create more questions for Sinson. For example, what police reports did Sinson fabricate (Ex. 5 at 2); how did Sinson harass Plaintiff's family and fabricate evidence from them (*id*. at 3); and which documents show that Sinson was involved in Payton's interrogations, plural (*id*. at 4)?

Plaintiff also argues the "information responsive to this inquiry is principally in the possession, custody, or control of Defendants." (Ex. 5 at 2 and 5.) Judges have likewise shot this argument down, explaining this "makes no sense . . ." *Flores*, No. 23 C 1736, 2024 U.S. Dist. LEXIS 166268, at *8. "It's as if to say, 'you know what you did' and puts the burden of proof on the defendants." *Id*. at *9.; *see also*, *Iglesias*, No. 19-CV-06508, Dkt. 174 at 5.

Sinson is not asking for every fact and piece of evidence that supports Plaintiff's position. Instead, he seeks the principal or material facts (if any).

B. Plaintiff's position

Similar to Plaintiff's above position about his responses to Defendant Rowan's contention interrogatories, Plaintiff believes that he has provided detailed and fulsome answers in response to Defendant Sinsons's Interrogatory Nos. 1-2. He has included individualized allegations as to what conduct Defendant Sinson engaged in, in line with his discovery obligations and reflecting his good-faith basis for pleading such behavior in his Complaint. It is unclear what additional level of specificity Defendant is still seeking—particularly at this early stage of discovery when Defendants are better positioned to know the exact misconduct that occurred—or if Defendants are seeking to invade the work-product doctrine and get every piece of Plaintiff's legal theory at

11

this stage of the case. Regardless, Plaintiff believes his answers to be fulsome and meet his discovery obligations. Plaintiff would also invite further briefing on the matter should the Court deem it appropriate.

## V.     Protective Confidentiality Order & HIPAA Order

The parties were also at impasse about two issues pertaining to the protective confidentiality order and forthcoming proposed HIPAA-qualified order. In light of this Court's ruling in *David Wright v. City of Chicago, et al.*, Case No. 24-cv-02466 (N.D. Ill.), the parties have agreed to follow that direction and came to the following agreement: (1) Defendants will provide unredacted date-of-birth information as long as it is designated as Attorney's Eyes Only; and (2) subpoenas for Plaintiff's mental health information will be returnable to him, and Plaintiff will be allowed a seven-day privilege review of mental health information. The parties will be submitting a proposed HIPAA-qualified order shortly.

## VI.    Third Party Subpoenas

Defendants wish to provide the Court with an update on third party subpoenas they have issued. The Defendants have issued third party subpoenas to the following entities: (a) the Cook County Public Defender's Office; (b) the Cook County State's Attorney's Office; (c) the Exoneration Project; (d) the Cook County Sheriff's Office; (e) the Cook County Medical Examiner's Office, (f) the Illinois State Police; (g) Connect Network; (h) the Illinois Prisoner Review Board; (i) the Illinois Department of Corrections Intelligence Center; (j) and the Illinois Office of the Attorney General.

### A.     The Cook County State's Attorney's Office

In July 2024, the Defendant Officers issued a subpoena to the Cook County State's Attorney's Office for materials associated with Plaintiff's underlying criminal case. In December

12

2024, the CCSAO produced approximately 10,000 pages of documents responsive to the subpoena. With the document production, the CCSAO also provided privilege logs of approximately 52 pages. The Defendants have recently requested a meet and confer with the CCSAO over the adequacy of the privilege logs and some of the withheld documents. If the Defendants and the CCSAO cannot resolve their disputes, the Defendants anticipate filing a motion to compel.

### B. The Exoneration Project

In October 2024, the Defendant Officers issued a subpoena to the Exoneration Project. The parties had a meet and confer regarding the scope of the subpoena and the Defendants have agreed to the Exoneration Project's requests for extensions of time to produce documents responsive to the subpoena. The Defendants are still waiting for the document production. The Defendants further anticipate issuing subpoenas for records to Plaintiff's private criminal defense attorneys who represented Plaintiff during his criminal and post-conviction criminal proceedings.

### C. Connect Network

The Defendant Officers provided notice of a subpoena to Connect Network. Plaintiff objected to the subpoena. The parties are scheduling a meet and confer regarding the subpoena.

### D. The Illinois Department of Corrections Intelligence Center

The Defendant Officers subpoenaed the IDOC Intelligence Center for Plaintiff's call logs of his recorded prison phone calls which were subsequently produced. The Defendant Officers are reviewing and analyzing the call logs and intend to notify Plaintiff's counsel of a subset of recorded phone calls that Defendants will seek from the Intelligence Center.

E.   **The Illinois Attorney General's Office**

In November 2024, the Defendant Officers subpoenaed the Illinois Attorney General's Office. Counsel for the Defendant Officers then had a meet and confer with counsel for the Attorney General's Office after which the Defendant Officers agreed to narrow their subpoena to account for burden and privilege concerns raised in the meet and confer. The Defendants are still waiting for responsive documents to be produced.

RESPECTFULLY SUBMITTED,

*/s/ Alyssa Martinez*

Jon Loevy
Elizabeth Wang
Tara Thompson
Jordan Poole
Alyssa Martinez
Loevy & Loevy
311 N. Aberdeen Street
Chicago, IL 60607
312-243-5900
alyssa@loevy.com

*Attorneys for Plaintiff*

*/s/ Brian J. Stefanich*
Special Assistant Corporation Counsel

Andrew M. Hale
Brian J. Stefanich
Kelly M. Olivier
Allyson L. West
Hale & Monico LLC
53 W Jackson Blvd., Suite 334
Chicago, IL 60604
andy@halemonico.com
bstefanich@halemonico.com
kolivier@halemonico.com
awest@halemonico.com

*Counsel for the Individual Defendant Officers*

*/s/ Anthony J. Masciopinto*
Special Assistant Corporation Counsel

Anthony J. Masciopinto
Natalie J. Smith
KULWIN, MASCIOPINTO & KULWIN LLP
161 North Clark Street, Suite 2500
Chicago, Illinois 60601
T: 312.641.0300
amasciopinto@kmklawllp.com

*Attorneys for Defendant City of Chicago*

*/s/ Michael C. Stephenson*

James Lydon
Michael Stephenson
Matthew Howroyd
Christian J. Michalik
HINSHAW & CULBERTSON LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
Telephone: 312-704-3848
Jlydon@hinshawlaw.com
mstephenson@hinshawlaw.com
mhowroyd@hinshawlaw.com
cmichalik@hinshawlaw.com

*Counsel for Defendant Sinson*

14

## **CERTIFICATE OF SERVICE**

I, Alyssa Martinez, an attorney, hereby certify that on February 14, 2025, I caused the foregoing document to be served on all counsel of record by using the Court's CM/ECF system.

/s/ *Alyssa Martinez*
*One of Plaintiff's Attorneys*