# EXHIBIT 3

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISTION**

LEONARD LOGAN,    )
          )
    Plaintiff,   )   Case No. 24-cv-03897
          )
v.         )   Hon. Franklin U. Valderrama
          )   District Judge
          )
CITY OF CHICAGO, *et al.,*  )   Hon. Young B. Kim
          )   Magistrate Judge
    Defendants.  )
          )

**PLAINTIFF'S SUPPLEMENTAL RESPONSES TO
DEFENDANT ROWAN'S FIRST SET OF INTERROGATORIES**

Plaintiff Leonard Logan, by and through his attorneys, Loevy & Loevy, supplements certain responses to Defendant Rowan's First Set of Interrogatories as follows:

**GENERAL OBJECTIONS**

Plaintiff expressly incorporates his general objections from Plaintiff's Responses to Defendant Rowan's First Set of Interrogatories.

**ANSWERS**

**Interrogatory No. 1:** State all nicknames or aliases that you have used from March 18, 1992 until the present.

**First Supplemental Response:** Plaintiff objects to this interrogatory as overly broad, vague, of an inappropriate temporal scope, and irrelevant. Subject to and without waiving any objection, Plaintiff states that he has gone by the nickname "Maine." Plaintiff's investigation into this matter continues, and he reserves the right to supplement or modify this answer as new information comes to light.

**Interrogatory No. 4:** Identify what conduct you attribute to Defendant Evans which you claim led to your arrest, prosecution, and conviction for the murder of Timothy Jones and the basis for you to make that claim.

      **First Supplemental Response:** Plaintiff objects to this interrogatory as vague, ambiguous, overly broad, and unduly burdensome, including to the extent it is asking for each piece of conduct Plaintiff attributes to Defendant Evans that led to Plaintiff's wrongful arrest, prosecution, conviction, and imprisonment. Plaintiff further objects to this interrogatory as it is being propounded at the outset of discovery, before Plaintiff has had an opportunity to depose Defendants and many of the relevant witnesses, and before Defendants have disclosed documents in their possession or have provided fulsome responses to relevant discovery requests. Contention interrogatories at the outset of litigation are inappropriate. *See, e.g., In re Peregrine Fin. Grp. Customer Litig.*, 2015 WL 1344466, at *4 (N.D. Ill. Mar. 20, 2015) (citing *Ziemack v. Centel Corp.*, 1995 WL 729295, at *2 (N.D. Ill. Dec. 7, 1995)) ("The general policy is to defer contention Interrogatories until discovery is near an end, in order to promote efficiency and fairness."). Further, contention interrogatories should be limited to asking for material or principal facts, rather than asking for the party to set forth their entire case. *Am. Needle, Inc. v. New Orleans*, No. 04 C 7806, 2012 WL 4327395, at *2 (N.D. Ill. Aug. 17, 2012) (citing *IBP, Inc. v. Mercantile Bank*, 179 F.R.D. 316, 321 (D. Kan. 1998) ("[t]o the extent [the contention interrogatories] ask for every fact and every application of law to fact which supports the identified allegations, the court finds them overly broad and unduly burdensome. An interrogatory may reasonably ask for the material or principal facts which support a contention."). Plaintiff further objects to this interrogatory because information responsive to this inquiry is principally in the possession, custody, or control of Defendants. Finally, Plaintiff objects to the extent that this Interrogatory calls for information protected by the attorney-client, work-product, or other common-law and statutory privileges.

Subject to and without waiving those objections, Plaintiff responds that he has prepared an extensive amended complaint that alleges in detail how each of the Defendants, including Defendant Glenn Evans, acted individually and in conspiracy with one another to conceal and withhold exculpatory evidence from Leonard Logan, his defense counsel, and the State's Attorney's Office; to fabricate false evidence against Leonard Logan implicating him in a crime he had not committed; to use psychological abuse to coerce a false statement by a third party, LaTonya Payton; and to prosecute Leonard Logan without any probable cause to believe that he had committed the murder of Timothy Jones. *See* Amended Complaint ¶¶ 1-10, 31-90.

Plaintiff specifically alleges that, as part of the investigative team, Defendant Evans, acting in conspiracy with the other Defendants, and others still unknown to Plaintiff, fabricated evidence in order to connect Leonard Logan to the crime, including false police reports and witness statements regarding Leonard Logan's purported connection to the crime, location at the time of the crime, and character; manufactured false witness testimony that was used to implicate Leonard Logan; and psychologically abused a third party, LaTonya Payton, to coerce a false inculpatory statement; and then suppressed that information during criminal proceedings; covered up their misconduct and destroyed or suppressed additional evidence that would have exculpated Leonard Logan, hiding that information from Leonard Logan, his attorneys, and other state prosecutors; presented false evidence to other state prosecutors and judicial authorities in order to secure and continue charges against Leonard Logan; and provided false reports, statements, and testimony in order to implicate Leonard Logan in a crime he had not committed. More specifically, Defendants, including Defendant Evans, knew that Leonard Logan was not involved in any way in the murder of Timothy Jones but Defendants, including Defendant Evans, subjected a third party, LaTonya Payton, to overwhelming psychological abuse over a period of three days in order to extract a false

3

statement from her, which was the only means by which they were able to get anyone to falsely implicate Plaintiff in a crime he did not commit. Defendants also fabricated additional evidence to bolster their case against Leonard Logan, including, but not limited to, LaTonya Payton's supposed identification of Leonard Logan, and Defendants harassed Plaintiff's family and fabricated additional evidence from them in order to frame Plaintiff. Defendants suppressed their fabrication of LaTonya Payton's false inculpatory statements and identification, their fabrication of the statements made by Plaintiff's family, and the unduly suggestive and manipulative tactics that Defendants used to get a false positive identification of Plaintiff from a witness.

Answering further, Plaintiff states that Defendants engaged in this misconduct even though there was absolutely no evidence (forensic, eyewitness, circumstantial, character, or otherwise), apart from that evidence fabricated by Defendants, that connected Leonard Logan to the murder of Timothy Jones. On the contrary, there was ample evidence that the crime was committed by a completely different suspect—someone shorter and lighter than Plaintiff, and someone who matched the physical description given by witnesses at the scene. Plaintiff states that to the best of his current knowledge, the Defendants, including Defendant Evans, fabricated and suppressed evidence as described above, interviewed witnesses, coerced LaTonya Payton, engaged in unduly suggestive and manipulative identification procedures, falsely testified against him, and secured Leonard Logan's arrest and charges against him.

Plaintiff additionally states that Defendant Evans was a public housing officer in the complex in which Plaintiff lived with his family. Prior to his wrongful conviction, Plaintiff filed a complaint with the Office of Professional Standards as well as a lawsuit against Defendant Evans as a result of Defendant Evans's continued harassment of Plaintiff and his family, including an incident in which Defendant Evans shot Plaintiff. Defendant Evans, along with other Defendant

Officers, fabricated police reports of witness interviews with Plaintiff's friends and family, which included fabricated inculpatory information. Similarly, Defendant Evans, along with other Defendant Officers, fabricated inculpatory information regarding Plaintiff's arrest. Defendant Evans also testified falsely against Plaintiff at his criminal trial, including by repeating a false version of the incident when he shot Plaintiff. Defendant Evans undertook these actions even though he was aware that Plaintiff was innocent in an attempt to frame him for a crime he did not commit. Defendant Evans additionally suppressed his knowledge of the fabrication of these inculpatory pieces of evidence that were used against Plaintiff, as well as his knowledge of Plaintiff's innocence.

In addition, Plaintiff directs Defendants to the documents he has produced. Plaintiff's investigation into this matter continues, and he reserves the right to supplement or modify this answer as new information comes to light.

**Interrogatory No. 5:** Identify what conduct you attribute to Defendant Almazan which you claim led to your arrest, prosecution, and conviction for the murder of Timothy Jones and the basis for you to make that claim.

**First Supplemental Response:** Plaintiff objects to this interrogatory as vague, ambiguous, overly broad, and unduly burdensome, including to the extent it is asking for each piece of conduct Plaintiff attributes to Defendant Almazan that led to Plaintiff's wrongful arrest, prosecution, conviction, and imprisonment. Plaintiff further objects to this interrogatory as it is being propounded at the outset of discovery, before Plaintiff has had an opportunity to depose Defendants and many of the relevant witnesses, and before Defendants have disclosed documents in their possession or have provided fulsome responses to relevant discovery requests. Contention interrogatories at the outset of litigation are inappropriate. *See, e.g., In re Peregrine Fin. Grp. Customer Litig.*, 2015 WL 1344466, at *4 (N.D. Ill. Mar. 20, 2015) (citing *Ziemack v. Centel Corp.*,

1995 WL 729295, at *2 (N.D. Ill. Dec. 7, 1995)) ("The general policy is to defer contention Interrogatories until discovery is near an end, in order to promote efficiency and fairness."). Further, contention interrogatories should be limited to asking for material or principal facts, rather than asking for the party to set forth their entire case. *Am. Needle, Inc. v. New Orleans*, No. 04 C 7806, 2012 WL 4327395, at *2 (N.D. Ill. Aug. 17, 2012) (citing *IBP, Inc. v. Mercantile Bank*, 179 F.R.D. 316, 321 (D. Kan. 1998) ("[t]o the extent [the contention interrogatories] ask for every fact and every application of law to fact which supports the identified allegations, the court finds them overly broad and unduly burdensome. An interrogatory may reasonably ask for the material or principal facts which support a contention."). Plaintiff further objects to this interrogatory because information responsive to this inquiry is principally in the possession, custody, or control of Defendants. Finally, Plaintiff objects to the extent that this Interrogatory calls for information protected by the attorney-client, work-product, or other common-law and statutory privileges.

Subject to and without waiving those objections, Plaintiff responds that he has prepared an extensive amended complaint that alleges in detail how each of the Defendants, including Defendant Almazan, acted individually and in conspiracy with one another to conceal and withhold exculpatory evidence from Leonard Logan, his defense counsel, and the State's Attorney's Office; to fabricate false evidence against Leonard Logan implicating him in a crime he had not committed; to use psychological abuse to coerce a false statement by a third party, LaTonya Payton; and to prosecute Leonard Logan without any probable cause to believe that he had committed the murder of Timothy Jones. *See* Amended Complaint ¶¶ 1-10, 31-90.

Plaintiff specifically alleges that, as part of the investigative team, Defendant Almazan, acting in conspiracy with the other Defendants, and others still unknown to Plaintiff, fabricated evidence in order to connect Leonard Logan to the crime, including false police reports and witness

statements regarding Leonard Logan's purported connection to the crime, location at the time of the crime, and character; manufactured false witness testimony that was used to implicate Leonard Logan; and psychologically abused a third party, LaTonya Payton, to coerce a false inculpatory statement; and then suppressed that information during criminal proceedings; covered up their misconduct and destroyed or suppressed additional evidence that would have exculpated Leonard Logan, hiding that information from Leonard Logan, his attorneys, and other state prosecutors; presented false evidence to other state prosecutors and judicial authorities in order to secure and continue charges against Leonard Logan; and provided false reports, statements, and testimony in order to implicate Leonard Logan in a crime he had not committed. More specifically, Defendants, including Defendant Almazan, knew that Leonard Logan was not involved in any way in the murder of Timothy Jones but Defendants, including Defendant Almazan, subjected a third party, LaTonya Payton, to overwhelming psychological abuse over a period of three days in order to extract a false statement from her, which was the only means by which they were able to get anyone to falsely implicate Plaintiff in a crime he did not commit. Defendants also fabricated additional evidence to bolster their case against Leonard Logan, including, but not limited to, LaTonya Payton's supposed identification of Leonard Logan, and Defendants harassed Plaintiff's family and fabricated additional evidence from them in order to frame Plaintiff. Defendants suppressed their fabrication of LaTonya Payton's false inculpatory statements and identification, their fabrication of the statements made by Plaintiff's family, and the unduly suggestive and manipulative tactics that Defendants used to get a false positive identification of Plaintiff from a witness.

Answering further, Plaintiff states that Defendants engaged in this misconduct even though there was absolutely no evidence (forensic, eyewitness, circumstantial, character, or otherwise),

7

apart from that evidence fabricated by Defendants, that connected Leonard Logan to the murder of Timothy Jones. On the contrary, there was ample evidence that the crime was committed by a completely different suspect—someone shorter and lighter than Plaintiff, and someone who matched the physical description given by witnesses at the scene. Plaintiff states that to the best of his current knowledge, the Defendants, including Defendant Almazan, fabricated and suppressed evidence as described above, interviewed witnesses, coerced LaTonya Payton, engaged in unduly suggestive and manipulative identification procedures, falsely testified against him, and secured Leonard Logan's arrest and charges against him.

Plaintiff additionally states that Defendant Almazan, along with other Defendant Officers, took Payton into custody, and subjected her to repeated interrogation and polygraph examinations over three days. Defendant Almazan, along with other Defendant Officers, denied Payton food, water, and sleep, as well as requests for a lawyer or a phone call, in order to force her to repeat their false narrative implicating Plaintiff. Defendant Almazan, along with other Defendant Officers, knew that Plaintiff was innocent but fabricated Payton's false statements implicating Plaintiff. Defendant Almazan, along with other Defendant Officers, also fabricated witnesses' purported identification of Plaintiff, including Payton's purported identification of Plaintiff. Defendant Almazan, along with other Defendant Officers, suppressed their fabrication of Payton's statements, her purported identification, and their coercion of Payton.

In addition, Plaintiff directs Defendants to the documents he has produced. Plaintiff's investigation into this matter continues, and he reserves the right to supplement or modify this answer as new information comes to light.

**Interrogatory No. 6:** Identify what conduct you attribute to Defendant Higgins which you claim led to your arrest, prosecution, and conviction for the murder of Timothy Jones and the basis for you to make that claim.

8

**First Supplemental Response:** Plaintiff objects to this interrogatory as vague, ambiguous, overly broad, and unduly burdensome, including to the extent it is asking for each piece of conduct Plaintiff attributes to Defendant Higgins that led to Plaintiff's wrongful arrest, prosecution, conviction, and imprisonment. Plaintiff further objects to this interrogatory as it is being propounded at the outset of discovery, before Plaintiff has had an opportunity to depose Defendants and many of the relevant witnesses, and before Defendants have disclosed documents in their possession or have provided fulsome responses to relevant discovery requests. Contention interrogatories at the outset of litigation are inappropriate. *See, e.g., In re Peregrine Fin. Grp. Customer Litig.*, 2015 WL 1344466, at *4 (N.D. Ill. Mar. 20, 2015) (citing *Ziemack v. Centel Corp.*, 1995 WL 729295, at *2 (N.D. Ill. Dec. 7, 1995)) ("The general policy is to defer contention Interrogatories until discovery is near an end, in order to promote efficiency and fairness."). Further, contention interrogatories should be limited to asking for material or principal facts, rather than asking for the party to set forth their entire case. *Am. Needle, Inc. v. New Orleans*, No. 04 C 7806, 2012 WL 4327395, at *2 (N.D. Ill. Aug. 17, 2012) (citing *IBP, Inc. v. Mercantile Bank*, 179 F.R.D. 316, 321 (D. Kan. 1998) ("[t]o the extent [the contention interrogatories] ask for every fact and every application of law to fact which supports the identified allegations, the court finds them overly broad and unduly burdensome. An interrogatory may reasonably ask for the material or principal facts which support a contention."). Plaintiff further objects to this interrogatory because information responsive to this inquiry is principally in the possession, custody, or control of Defendants. Finally, Plaintiff objects to the extent that this Interrogatory calls for information protected by the attorney-client, work-product, or other common-law and statutory privileges.

Subject to and without waiving those objections, Plaintiff responds that he has prepared an extensive amended complaint that alleges in detail how each of the Defendants, including

Defendant Higgins, acted individually and in conspiracy with one another to conceal and withhold exculpatory evidence from Leonard Logan, his defense counsel, and the State's Attorney's Office; to fabricate false evidence against Leonard Logan implicating him in a crime he had not committed; to use psychological abuse to coerce a false statement by a third party, LaTonya Payton; and to prosecute Leonard Logan without any probable cause to believe that he had committed the murder of Timothy Jones. *See* Amended Complaint ¶¶ 1-10, 31-90.

Plaintiff specifically alleges that, as part of the investigative team, Defendant Higgins, acting in conspiracy with the other Defendants, and others still unknown to Plaintiff, fabricated evidence in order to connect Leonard Logan to the crime, including false police reports and witness statements regarding Leonard Logan's purported connection to the crime, location at the time of the crime, and character; manufactured false witness testimony that was used to implicate Leonard Logan; and psychologically abused a third party, LaTonya Payton, to coerce a false inculpatory statement; and then suppressed that information during criminal proceedings; covered up their misconduct and destroyed or suppressed additional evidence that would have exculpated Leonard Logan, hiding that information from Leonard Logan, his attorneys, and other state prosecutors; presented false evidence to other state prosecutors and judicial authorities in order to secure and continue charges against Leonard Logan; and provided false reports, statements, and testimony in order to implicate Leonard Logan in a crime he had not committed. More specifically, Defendants, including Defendant Higgins, knew that Leonard Logan was not involved in any way in the murder of Timothy Jones but Defendants, including Defendant Higgins, subjected a third party, LaTonya Payton, to overwhelming psychological abuse over a period of three days in order to extract a false statement from her, which was the only means by which they were able to get anyone to falsely implicate Plaintiff in a crime he did not commit. Defendants also fabricated additional evidence to

bolster their case against Leonard Logan, including, but not limited to, LaTonya Payton's supposed identification of Leonard Logan, and Defendants harassed Plaintiff's family and fabricated additional evidence from them in order to frame Plaintiff. Defendants suppressed their fabrication of LaTonya Payton's false inculpatory statements and identification, their fabrication of the statements made by Plaintiff's family, and the unduly suggestive and manipulative tactics that Defendants used to get a false positive identification of Plaintiff from a witness.

Answering further, Plaintiff states that Defendants engaged in this misconduct even though there was absolutely no evidence (forensic, eyewitness, circumstantial, character, or otherwise), apart from that evidence fabricated by Defendants, that connected Leonard Logan to the murder of Timothy Jones. On the contrary, there was ample evidence that the crime was committed by a completely different suspect—someone shorter and lighter than Plaintiff, and someone who matched the physical description given by witnesses at the scene. Plaintiff states that to the best of his current knowledge, the Defendants, including Defendant Higgins, fabricated and suppressed evidence as described above, interviewed witnesses, coerced LaTonya Payton, engaged in unduly suggestive and manipulative identification procedures, falsely testified against him, and secured Leonard Logan's arrest and charges against him.

Plaintiff additionally states that Defendant Higgins, along with other Defendant Officers, took Payton into custody, and subjected her to repeated interrogation and polygraph examinations over three days. Defendant Higgins, along with other Defendant Officers, denied Payton food, water, and sleep, as well as requests for a lawyer or a phone call, in order to force her to repeat their false narrative implicating Plaintiff. Defendant Higgins, along with other Defendant Officers, knew that Plaintiff was innocent but fabricated Payton's false statements implicating Plaintiff. Defendant Higgins, along with other Defendant Officers, also fabricated witnesses' purported

11

identification of Plaintiff, including Payton's purported identification of Plaintiff. Defendant Higgins, along with other Defendant Officers, suppressed their fabrication of Payton's statements, her purported identification, and their coercion of Payton.

In addition, Plaintiff directs Defendants to the documents he has produced. Plaintiff's investigation into this matter continues, and he reserves the right to supplement or modify this answer as new information comes to light.

**Interrogatory No. 7:** Identify what conduct you attribute to Defendant O'Boyle which you claim led to your arrest, prosecution, and conviction for the murder of Timothy Jones and the basis for you to make that claim.

First Supplemental Response: Plaintiff objects to this interrogatory as vague, ambiguous, overly broad, and unduly burdensome, including to the extent it is asking for each piece of conduct Plaintiff attributes to Defendant O'Boyle that led to Plaintiff's wrongful arrest, prosecution, conviction, and imprisonment. Plaintiff further objects to this interrogatory as it is being propounded at the outset of discovery, before Plaintiff has had an opportunity to depose Defendants and many of the relevant witnesses, and before Defendants have disclosed documents in their possession or have provided fulsome responses to relevant discovery requests. Contention interrogatories at the outset of litigation are inappropriate. *See, e.g., In re Peregrine Fin. Grp. Customer Litig.*, 2015 WL 1344466, at *4 (N.D. Ill. Mar. 20, 2015) (citing *Ziemack v. Centel Corp.*, 1995 WL 729295, at *2 (N.D. Ill. Dec. 7, 1995)) ("The general policy is to defer contention Interrogatories until discovery is near an end, in order to promote efficiency and fairness."). Further, contention interrogatories should be limited to asking for material or principal facts, rather than asking for the party to set forth their entire case. *Am. Needle, Inc. v. New Orleans*, No. 04 C 7806, 2012 WL 4327395, at *2 (N.D. Ill. Aug. 17, 2012) (citing *IBP, Inc. v. Mercantile Bank*, 179 F.R.D. 316, 321 (D. Kan. 1998) ("[t]o the extent [the contention interrogatories] ask for every fact

and every application of law to fact which supports the identified allegations, the court finds them overly broad and unduly burdensome. An interrogatory may reasonably ask for the material or principal facts which support a contention."). Plaintiff further objects to this interrogatory because information responsive to this inquiry is principally in the possession, custody, or control of Defendants. Finally, Plaintiff objects to the extent that this Interrogatory calls for information protected by the attorney-client, work-product, or other common-law and statutory privileges.

Subject to and without waiving those objections, Plaintiff responds that he has prepared an extensive amended complaint that alleges in detail how each of the Defendants, including Defendant O'Boyle, acted individually and in conspiracy with one another to conceal and withhold exculpatory evidence from Leonard Logan, his defense counsel, and the State's Attorney's Office; to fabricate false evidence against Leonard Logan implicating him in a crime he had not committed; to use psychological abuse to coerce a false statement by a third party, LaTonya Payton; and to prosecute Leonard Logan without any probable cause to believe that he had committed the murder of Timothy Jones. *See* Amended Complaint ¶¶ 1-10, 31-90.

Plaintiff specifically alleges that, as part of the investigative team, Defendant O'Boyle, acting in conspiracy with the other Defendants, and others still unknown to Plaintiff, fabricated evidence in order to connect Leonard Logan to the crime, including false police reports and witness statements regarding Leonard Logan's purported connection to the crime, location at the time of the crime, and character; manufactured false witness testimony that was used to implicate Leonard Logan; and psychologically abused a third party, LaTonya Payton, to coerce a false inculpatory statement; and then suppressed that information during criminal proceedings; covered up their misconduct and destroyed or suppressed additional evidence that would have exculpated Leonard Logan, hiding that information from Leonard Logan, his attorneys, and other state prosecutors;

presented false evidence to other state prosecutors and judicial authorities in order to secure and continue charges against Leonard Logan; and provided false reports, statements, and testimony in order to implicate Leonard Logan in a crime he had not committed. More specifically, Defendants, including Defendant O'Boyle, knew that Leonard Logan was not involved in any way in the murder of Timothy Jones but Defendants, including Defendant O'Boyle, subjected a third party, LaTonya Payton, to overwhelming psychological abuse over a period of three days in order to extract a false statement from her, which was the only means by which they were able to get anyone to falsely implicate Plaintiff in a crime he did not commit. Defendants also fabricated additional evidence to bolster their case against Leonard Logan, including, but not limited to, LaTonya Payton's supposed identification of Leonard Logan, and Defendants harassed Plaintiff's family and fabricated additional evidence from them in order to frame Plaintiff. Defendants suppressed their fabrication of LaTonya Payton's false inculpatory statements and identification, their fabrication of the statements made by Plaintiff's family, and the unduly suggestive and manipulative tactics that Defendants used to get a false positive identification of Plaintiff from a witness.

Answering further, Plaintiff states that Defendants engaged in this misconduct even though there was absolutely no evidence (forensic, eyewitness, circumstantial, character, or otherwise), apart from that evidence fabricated by Defendants, that connected Leonard Logan to the murder of Timothy Jones. On the contrary, there was ample evidence that the crime was committed by a completely different suspect—someone shorter and lighter than Plaintiff, and someone who matched the physical description given by witnesses at the scene. Plaintiff states that to the best of his current knowledge, the Defendants, including Defendant O'Boyle, fabricated and suppressed evidence as described above, interviewed witnesses, coerced LaTonya Payton, engaged in unduly

suggestive and manipulative identification procedures, falsely testified against him, and secured Leonard Logan's arrest and charges against him.

Plaintiff additionally states that Defendant O'Boyle, along with other Defendant Officers, took Payton into custody, and subjected her to repeated interrogation and polygraph examinations over three days. Defendant O'Boyle, along with other Defendant Officers, denied Payton food, water, and sleep, as well as requests for a lawyer or a phone call, in order to force her to repeat their false narrative implicating Plaintiff. Defendant O'Boyle, along with other Defendant Officers, knew that Plaintiff was innocent but fabricated Payton's false statements implicating Plaintiff. Defendant O'Boyle, along with other Defendant Officers, suppressed their fabrication of Payton's statements and their coercion of Payton. In addition, Defendant O'Boyle procured supposed eyewitness identifications of Plaintiff by using unduly suggestive identification techniques.

In addition, Plaintiff directs Defendants to the documents he has produced. Plaintiff's investigation into this matter continues, and he reserves the right to supplement or modify this answer as new information comes to light.

**Interrogatory No. 8:** Identify what conduct you attribute to Defendant Graziano which you claim led to your arrest, prosecution, and conviction for the murder of Timothy Jones and the basis for you to make that claim.

**First Supplemental Response:** Plaintiff objects to this interrogatory as vague, ambiguous, overly broad, and unduly burdensome, including to the extent it is asking for each piece of conduct Plaintiff attributes to Defendant Graziano that led to Plaintiff's wrongful arrest, prosecution, conviction, and imprisonment. Plaintiff further objects to this interrogatory as it is being propounded at the outset of discovery, before Plaintiff has had an opportunity to depose Defendants and many of the relevant witnesses, and before Defendants have disclosed documents in their possession or have provided fulsome responses to relevant discovery requests. Contention

15

interrogatories at the outset of litigation are inappropriate. *See, e.g., In re Peregrine Fin. Grp. Customer Litig.*, 2015 WL 1344466, at *4 (N.D. Ill. Mar. 20, 2015) (citing *Ziemack v. Centel Corp.*, 1995 WL 729295, at *2 (N.D. Ill. Dec. 7, 1995)) ("The general policy is to defer contention Interrogatories until discovery is near an end, in order to promote efficiency and fairness."). Further, contention interrogatories should be limited to asking for material or principal facts, rather than asking for the party to set forth their entire case. *Am. Needle, Inc. v. New Orleans*, No. 04 C 7806, 2012 WL 4327395, at *2 (N.D. Ill. Aug. 17, 2012) (citing *IBP, Inc. v. Mercantile Bank*, 179 F.R.D. 316, 321 (D. Kan. 1998) ("[t]o the extent [the contention interrogatories] ask for every fact and every application of law to fact which supports the identified allegations, the court finds them overly broad and unduly burdensome. An interrogatory may reasonably ask for the material or principal facts which support a contention."). Plaintiff further objects to this interrogatory because information responsive to this inquiry is principally in the possession, custody, or control of Defendants. Finally, Plaintiff objects to the extent that this Interrogatory calls for information protected by the attorney-client, work-product, or other common-law and statutory privileges.

Subject to and without waiving those objections, Plaintiff responds that he has prepared an extensive amended complaint that alleges in detail how each of the Defendants, including Defendant Graziano, acted individually and in conspiracy with one another to conceal and withhold exculpatory evidence from Leonard Logan, his defense counsel, and the State's Attorney's Office; to fabricate false evidence against Leonard Logan implicating him in a crime he had not committed; to use psychological abuse to coerce a false statement by a third party, LaTonya Payton; and to prosecute Leonard Logan without any probable cause to believe that he had committed the murder of Timothy Jones. *See* Amended Complaint ¶¶ 1-10, 31-90.

Plaintiff specifically alleges that, as part of the investigative team, Defendant Graziano, acting in conspiracy with the other Defendants, and others still unknown to Plaintiff, fabricated evidence in order to connect Leonard Logan to the crime, including false police reports and witness statements regarding Leonard Logan's purported connection to the crime, location at the time of the crime, and character; manufactured false witness testimony that was used to implicate Leonard Logan; and psychologically abused a third party, LaTonya Payton, to coerce a false inculpatory statement; and then suppressed that information during criminal proceedings; covered up their misconduct and destroyed or suppressed additional evidence that would have exculpated Leonard Logan, hiding that information from Leonard Logan, his attorneys, and other state prosecutors; presented false evidence to other state prosecutors and judicial authorities in order to secure and continue charges against Leonard Logan; and provided false reports, statements, and testimony in order to implicate Leonard Logan in a crime he had not committed. More specifically, Defendants, including Defendant Graziano, knew that Leonard Logan was not involved in any way in the murder of Timothy Jones but Defendants, including Defendant Graziano, subjected a third party, LaTonya Payton, to overwhelming psychological abuse over a period of three days in order to extract a false statement from her, which was the only means by which they were able to get anyone to falsely implicate Plaintiff in a crime he did not commit. Defendants also fabricated additional evidence to bolster their case against Leonard Logan, including, but not limited to, LaTonya Payton's supposed identification of Leonard Logan, and Defendants harassed Plaintiff's family and fabricated additional evidence from them in order to frame Plaintiff. Defendants suppressed their fabrication of LaTonya Payton's false inculpatory statements and identification, their fabrication of the statements made by Plaintiff's family, and the unduly suggestive and

manipulative tactics that Defendants used to get a false positive identification of Plaintiff from a witness.

Answering further, Plaintiff states that Defendants engaged in this misconduct even though there was absolutely no evidence (forensic, eyewitness, circumstantial, character, or otherwise), apart from that evidence fabricated by Defendants, that connected Leonard Logan to the murder of Timothy Jones. On the contrary, there was ample evidence that the crime was committed by a completely different suspect—someone shorter and lighter than Plaintiff, and someone who matched the physical description given by witnesses at the scene. Plaintiff states that to the best of his current knowledge, the Defendants, including Defendant Graziano, fabricated and suppressed evidence as described above, interviewed witnesses, coerced LaTonya Payton, engaged in unduly suggestive and manipulative identification procedures, falsely testified against him, and secured Leonard Logan's arrest and charges against him.

Plaintiff additionally states that Defendant Graziano, along with other Defendant Officers, fabricated police reports purporting to document interviews of Plaintiff's friends and family in order to frame him for the murder, and even though he knew the fabricated information was false, Defendant Graziano suppressed his knowledge of this fabrication.

In addition, Plaintiff directs Defendants to the documents he has produced. Plaintiff's investigation into this matter continues, and he reserves the right to supplement or modify this answer as new information comes to light.

**Interrogatory No. 9:** Identify what conduct you attribute to Defendant Lynch which you claim led to your arrest, prosecution, and conviction for the murder of Timothy Jones and the basis for you to make that claim.

**First Supplemental Response:** Plaintiff objects to this interrogatory as vague, ambiguous, overly broad, and unduly burdensome, including to the extent it is asking for each piece of conduct

18

Plaintiff attributes to Defendant Lynch that led to Plaintiff's wrongful arrest, prosecution, conviction, and imprisonment. Plaintiff further objects to this interrogatory as it is being propounded at the outset of discovery, before Plaintiff has had an opportunity to depose Defendants and many of the relevant witnesses, and before Defendants have disclosed documents in their possession or have provided fulsome responses to relevant discovery requests. Contention interrogatories at the outset of litigation are inappropriate. *See, e.g., In re Peregrine Fin. Grp. Customer Litig.*, 2015 WL 1344466, at *4 (N.D. Ill. Mar. 20, 2015) (citing *Ziemack v. Centel Corp.*, 1995 WL 729295, at *2 (N.D. Ill. Dec. 7, 1995)) ("The general policy is to defer contention Interrogatories until discovery is near an end, in order to promote efficiency and fairness."). Further, contention interrogatories should be limited to asking for material or principal facts, rather than asking for the party to set forth their entire case. *Am. Needle, Inc. v. New Orleans*, No. 04 C 7806, 2012 WL 4327395, at *2 (N.D. Ill. Aug. 17, 2012) (citing *IBP, Inc. v. Mercantile Bank*, 179 F.R.D. 316, 321 (D. Kan. 1998) ("[t]o the extent [the contention interrogatories] ask for every fact and every application of law to fact which supports the identified allegations, the court finds them overly broad and unduly burdensome. An interrogatory may reasonably ask for the material or principal facts which support a contention."). Plaintiff further objects to this interrogatory because information responsive to this inquiry is principally in the possession, custody, or control of Defendants. Finally, Plaintiff objects to the extent that this Interrogatory calls for information protected by the attorney-client, work-product, or other common-law and statutory privileges.

Subject to and without waiving those objections, Plaintiff responds that he has prepared an extensive amended complaint that alleges in detail how each of the Defendants, including Defendant Lynch, acted individually and in conspiracy with one another to conceal and withhold exculpatory evidence from Leonard Logan, his defense counsel, and the State's Attorney's Office;

to fabricate false evidence against Leonard Logan implicating him in a crime he had not committed; to use psychological abuse to coerce a false statement by a third party, LaTonya Payton; and to prosecute Leonard Logan without any probable cause to believe that he had committed the murder of Timothy Jones. *See* Amended Complaint ¶¶ 1-10, 31-90.

Plaintiff specifically alleges that, as part of the investigative team, Defendant Lynch, acting in conspiracy with the other Defendants, and others still unknown to Plaintiff, fabricated evidence in order to connect Leonard Logan to the crime, including false police reports and witness statements regarding Leonard Logan's purported connection to the crime, location at the time of the crime, and character; manufactured false witness testimony that was used to implicate Leonard Logan; and psychologically abused a third party, LaTonya Payton, to coerce a false inculpatory statement; and then suppressed that information during criminal proceedings; covered up their misconduct and destroyed or suppressed additional evidence that would have exculpated Leonard Logan, hiding that information from Leonard Logan, his attorneys, and other state prosecutors; presented false evidence to other state prosecutors and judicial authorities in order to secure and continue charges against Leonard Logan; and provided false reports, statements, and testimony in order to implicate Leonard Logan in a crime he had not committed. More specifically, Defendants, including Defendant Lynch, knew that Leonard Logan was not involved in any way in the murder of Timothy Jones but Defendants, including Defendant Lynch, subjected a third party, LaTonya Payton, to overwhelming psychological abuse over a period of three days in order to extract a false statement from her, which was the only means by which they were able to get anyone to falsely implicate Plaintiff in a crime he did not commit. Defendants also fabricated additional evidence to bolster their case against Leonard Logan, including, but not limited to, LaTonya Payton's supposed identification of Leonard Logan, and Defendants harassed Plaintiff's family and fabricated

additional evidence from them in order to frame Plaintiff. Defendants suppressed their fabrication of LaTonya Payton's false inculpatory statements and identification, their fabrication of the statements made by Plaintiff's family, and the unduly suggestive and manipulative tactics that Defendants used to get a false positive identification of Plaintiff from a witness.

Answering further, Plaintiff states that Defendants engaged in this misconduct even though there was absolutely no evidence (forensic, eyewitness, circumstantial, character, or otherwise), apart from that evidence fabricated by Defendants, that connected Leonard Logan to the murder of Timothy Jones. On the contrary, there was ample evidence that the crime was committed by a completely different suspect—someone shorter and lighter than Plaintiff, and someone who matched the physical description given by witnesses at the scene. Plaintiff states that to the best of his current knowledge, the Defendants, including Defendant Lynch, fabricated and suppressed evidence as described above, interviewed witnesses, coerced LaTonya Payton, engaged in unduly suggestive and manipulative identification procedures, falsely testified against him, and secured Leonard Logan's arrest and charges against him.

Plaintiff additionally states that Defendant Lynch, along with other Defendant Officers, fabricated police reports purporting to document interviews of Plaintiff's friends and family in order to frame him for the murder, and even though he knew the fabricated information was false. Defendant Lynch suppressed his knowledge of this fabrication.

In addition, Plaintiff directs Defendants to the documents he has produced. Plaintiff's investigation into this matter continues, and he reserves the right to supplement or modify this answer as new information comes to light.

**Interrogatory No. 10:** Identify what conduct you attribute to Defendant Van Witzenberg which you claim led to your arrest, prosecution, and conviction for the murder of Timothy Jones and the basis for you to make that claim.

**First Supplemental Response:** Plaintiff objects to this interrogatory as vague, ambiguous, overly broad, and unduly burdensome, including to the extent it is asking for each piece of conduct Plaintiff attributes to Defendant Van Witzenberg that led to Plaintiff's wrongful arrest, prosecution, conviction, and imprisonment. Plaintiff further objects to this interrogatory as it is being propounded at the outset of discovery, before Plaintiff has had an opportunity to depose Defendants and many of the relevant witnesses, and before Defendants have disclosed documents in their possession or have provided fulsome responses to relevant discovery requests. Contention interrogatories at the outset of litigation are inappropriate. *See, e.g., In re Peregrine Fin. Grp. Customer Litig.*, 2015 WL 1344466, at *4 (N.D. Ill. Mar. 20, 2015) (citing *Ziemack v. Centel Corp.*, 1995 WL 729295, at *2 (N.D. Ill. Dec. 7, 1995)) ("The general policy is to defer contention Interrogatories until discovery is near an end, in order to promote efficiency and fairness."). Further, contention interrogatories should be limited to asking for material or principal facts, rather than asking for the party to set forth their entire case. *Am. Needle, Inc. v. New Orleans*, No. 04 C 7806, 2012 WL 4327395, at *2 (N.D. Ill. Aug. 17, 2012) (citing *IBP, Inc. v. Mercantile Bank*, 179 F.R.D. 316, 321 (D. Kan. 1998) ("[t]o the extent [the contention interrogatories] ask for every fact and every application of law to fact which supports the identified allegations, the court finds them overly broad and unduly burdensome. An interrogatory may reasonably ask for the material or principal facts which support a contention."). Plaintiff further objects to this interrogatory because information responsive to this inquiry is principally in the possession, custody, or control of Defendants. Finally, Plaintiff objects to the extent that this Interrogatory calls for information protected by the attorney-client, work-product, or other common-law and statutory privileges.

Subject to and without waiving those objections, Plaintiff responds that he has prepared an extensive amended complaint that alleges in detail how each of the Defendants, including

22

Defendant Van Witzenberg, acted individually and in conspiracy with one another to conceal and withhold exculpatory evidence from Leonard Logan, his defense counsel, and the State's Attorney's Office; to fabricate false evidence against Leonard Logan implicating him in a crime he had not committed; to use psychological abuse to coerce a false statement by a third party, LaTonya Payton; and to prosecute Leonard Logan without any probable cause to believe that he had committed the murder of Timothy Jones. *See* Amended Complaint ¶¶ 1-10, 31-90.

Plaintiff specifically alleges that, as part of the investigative team, Defendant Van Witzenberg, acting in conspiracy with the other Defendants, and others still unknown to Plaintiff, fabricated evidence in order to connect Leonard Logan to the crime, including false police reports and witness statements regarding Leonard Logan's purported connection to the crime, location at the time of the crime, and character; manufactured false witness testimony that was used to implicate Leonard Logan; and psychologically abused a third party, LaTonya Payton, to coerce a false inculpatory statement; and then suppressed that information during criminal proceedings; covered up their misconduct and destroyed or suppressed additional evidence that would have exculpated Leonard Logan, hiding that information from Leonard Logan, his attorneys, and other state prosecutors; presented false evidence to other state prosecutors and judicial authorities in order to secure and continue charges against Leonard Logan; and provided false reports, statements, and testimony in order to implicate Leonard Logan in a crime he had not committed. More specifically, Defendants, including Defendant Van Witzenberg, knew that Leonard Logan was not involved in any way in the murder of Timothy Jones but Defendants, including Defendant Van Witzenberg, subjected a third party, LaTonya Payton, to overwhelming psychological abuse over a period of three days in order to extract a false statement from her, which was the only means by which they were able to get anyone to falsely implicate Plaintiff in a crime he did not commit.

23

Defendants also fabricated additional evidence to bolster their case against Leonard Logan, including, but not limited to, LaTonya Payton's supposed identification of Leonard Logan, and Defendants harassed Plaintiff's family and fabricated additional evidence from them in order to frame Plaintiff. Defendants suppressed their fabrication of LaTonya Payton's false inculpatory statements and identification, their fabrication of the statements made by Plaintiff's family, and the unduly suggestive and manipulative tactics that Defendants used to get a false positive identification of Plaintiff from a witness.

Answering further, Plaintiff states that Defendants engaged in this misconduct even though there was absolutely no evidence (forensic, eyewitness, circumstantial, character, or otherwise), apart from that evidence fabricated by Defendants, that connected Leonard Logan to the murder of Timothy Jones. On the contrary, there was ample evidence that the crime was committed by a completely different suspect—someone shorter and lighter than Plaintiff, and someone who matched the physical description given by witnesses at the scene. Plaintiff states that to the best of his current knowledge, the Defendants, including Defendant Van Witzenberg, fabricated and suppressed evidence as described above, interviewed witnesses, coerced LaTonya Payton, engaged in unduly suggestive and manipulative identification procedures, falsely testified against him, and secured Leonard Logan's arrest and charges against him.

Plaintiff additionally states that Defendant Van Witzenberg along with other Defendant Officers, subjected Payton to repeated interrogation and polygraph examinations over three days. Defendant Van Witzenberg, along with other Defendant Officers, denied Payton food, water, and sleep, as well as requests for a lawyer or a phone call, in order to force her to repeat their false narrative implicating Plaintiff. Defendant Van Witzenberg, along with other Defendant Officers, knew that Plaintiff was innocent but fabricated Payton's false statements implicating Plaintiff.

24

Defendant Van Witzenberg, along with Defendant Sinson, coerced Payton into signing a fabricated statement implicating Payton in the shooting, although Defendant Van Witzenberg knew it was false. Defendant Van Witzenberg also documented this false statement by Payton in a fabricated police report. Defendant Van Witzenberg, along with other Defendant Officers, suppressed their fabrication of Payton's statements and their coercion of Payton. Defendant Van Witzenberg also brought Payton to the grand jury and threatened her—telling her that she would be charged with first degree murder if Payton did not repeat the fabricated story implicating Plaintiff that Defendant Van Witzenberg and other Defendant Officers made up to frame Plaintiff. Defendant Van Witzenberg also procured supposed eyewitness identifications of Plaintiff using unduly suggestive lineup techniques.

In addition, Plaintiff directs Defendants to the documents he has produced. Plaintiff's investigation into this matter continues, and he reserves the right to supplement or modify this answer as new information comes to light.

**Interrogatory No. 11:** Identify what conduct you attribute to Defendant Bernatek which you claim led to your arrest, prosecution, and conviction for the murder of Timothy Jones and the basis for you to make that claim.

**First Supplemental Response:** Plaintiff objects to this interrogatory as vague, ambiguous, overly broad, and unduly burdensome, including to the extent it is asking for each piece of conduct Plaintiff attributes to Defendant Bernatek that led to Plaintiff's wrongful arrest, prosecution, conviction, and imprisonment. Plaintiff further objects to this interrogatory as it is being propounded at the outset of discovery, before Plaintiff has had an opportunity to depose Defendants and many of the relevant witnesses, and before Defendants have disclosed documents in their possession or have provided fulsome responses to relevant discovery requests. Contention interrogatories at the outset of litigation are inappropriate. *See, e.g., In re Peregrine Fin. Grp.*

25

*Customer Litig.*, 2015 WL 1344466, at *4 (N.D. Ill. Mar. 20, 2015) (citing *Ziemack v. Centel Corp.*, 1995 WL 729295, at *2 (N.D. Ill. Dec. 7, 1995)) ("The general policy is to defer contention Interrogatories until discovery is near an end, in order to promote efficiency and fairness."). Further, contention interrogatories should be limited to asking for material or principal facts, rather than asking for the party to set forth their entire case. *Am. Needle, Inc. v. New Orleans*, No. 04 C 7806, 2012 WL 4327395, at *2 (N.D. Ill. Aug. 17, 2012) (citing *IBP, Inc. v. Mercantile Bank*, 179 F.R.D. 316, 321 (D. Kan. 1998) ("[t]o the extent [the contention interrogatories] ask for every fact and every application of law to fact which supports the identified allegations, the court finds them overly broad and unduly burdensome. An interrogatory may reasonably ask for the material or principal facts which support a contention."). Plaintiff further objects to this interrogatory because information responsive to this inquiry is principally in the possession, custody, or control of Defendants. Finally, Plaintiff objects to the extent that this Interrogatory calls for information protected by the attorney-client, work-product, or other common-law and statutory privileges.

Subject to and without waiving those objections, Plaintiff responds that he has prepared an extensive amended complaint that alleges in detail how each of the Defendants, including Defendant Bernatek, acted individually and in conspiracy with one another to conceal and withhold exculpatory evidence from Leonard Logan, his defense counsel, and the State's Attorney's Office; to fabricate false evidence against Leonard Logan implicating him in a crime he had not committed; to use psychological abuse to coerce a false statement by a third party, LaTonya Payton; and to prosecute Leonard Logan without any probable cause to believe that he had committed the murder of Timothy Jones. *See* Amended Complaint ¶¶ 1-10, 31-90.

Plaintiff specifically alleges that, as part of the investigative team, Defendant Bernatek, acting in conspiracy with the other Defendants, and others still unknown to Plaintiff, fabricated

evidence in order to connect Leonard Logan to the crime, including false police reports and witness statements regarding Leonard Logan's purported connection to the crime, location at the time of the crime, and character; manufactured false witness testimony that was used to implicate Leonard Logan; and psychologically abused a third party, LaTonya Payton, to coerce a false inculpatory statement; and then suppressed that information during criminal proceedings; covered up their misconduct and destroyed or suppressed additional evidence that would have exculpated Leonard Logan, hiding that information from Leonard Logan, his attorneys, and other state prosecutors; presented false evidence to other state prosecutors and judicial authorities in order to secure and continue charges against Leonard Logan; and provided false reports, statements, and testimony in order to implicate Leonard Logan in a crime he had not committed. More specifically, Defendants, including Defendant Bernatek, knew that Leonard Logan was not involved in any way in the murder of Timothy Jones but Defendants, including Defendant Bernatek, subjected a third party, LaTonya Payton, to overwhelming psychological abuse over a period of three days in order to extract a false statement from her, which was the only means by which they were able to get anyone to falsely implicate Plaintiff in a crime he did not commit. Defendants also fabricated additional evidence to bolster their case against Leonard Logan, including, but not limited to, LaTonya Payton's supposed identification of Leonard Logan, and Defendants harassed Plaintiff's family and fabricated additional evidence from them in order to frame Plaintiff. Defendants suppressed their fabrication of LaTonya Payton's false inculpatory statements and identification, their fabrication of the statements made by Plaintiff's family, and the unduly suggestive and manipulative tactics that Defendants used to get a false positive identification of Plaintiff from a witness.

Answering further, Plaintiff states that Defendants engaged in this misconduct even though there was absolutely no evidence (forensic, eyewitness, circumstantial, character, or otherwise), apart from that evidence fabricated by Defendants, that connected Leonard Logan to the murder of Timothy Jones. On the contrary, there was ample evidence that the crime was committed by a completely different suspect—someone shorter and lighter than Plaintiff, and someone who matched the physical description given by witnesses at the scene. Plaintiff states that to the best of his current knowledge, the Defendants, including Defendant Bernatek, fabricated and suppressed evidence as described above, interviewed witnesses, coerced LaTonya Payton, engaged in unduly suggestive and manipulative identification procedures, falsely testified against him, and secured Leonard Logan's arrest and charges against him.

Plaintiff additionally states that Defendant Bernatek, along with other Defendant Officers, subjected Payton to repeated interrogation and polygraph examinations over three days. Defendant Bernatek, along with other Defendant Officers, denied Payton food, water, and sleep, as well as requests for a lawyer or a phone call, in order to force her to repeat their false narrative implicating Plaintiff. Defendant Bernatek, along with other Defendant Officers, knew that Plaintiff was innocent but fabricated Payton's false statements implicating Plaintiff. Defendant Bernatek also documented this false statement by Payton in a fabricated police report. Defendant Bernatek, along with other Defendant Officers, suppressed their fabrication of Payton's statements and their coercion of Payton. Defendant Bernatek also procured supposed eyewitness identifications of Plaintiff using unduly suggestive lineup techniques. Plaintiff additionally states that Defendant Bernatek, along with other Defendant Officers, fabricated police reports purporting to document interviews of Plaintiff's friends and family in order to frame him for the murder, and even though

28

he knew the fabricated information was false. Defendant Bernatek suppressed his knowledge of this fabrication.

In addition, Plaintiff directs Defendants to the documents he has produced. Plaintiff's investigation into this matter continues, and he reserves the right to supplement or modify this answer as new information comes to light.

**Interrogatory No. 12:** Identify what conduct you attribute to Defendant Halloran which you claim led to your arrest, prosecution, and conviction for the murder of Timothy Jones and the basis for you to make that claim.

**First Supplemental Response:** Plaintiff objects to this interrogatory as vague, ambiguous, overly broad, and unduly burdensome, including to the extent it is asking for each piece of conduct Plaintiff attributes to Defendant Halloran that led to Plaintiff's wrongful arrest, prosecution, conviction, and imprisonment. Plaintiff further objects to this interrogatory as it is being propounded at the outset of discovery, before Plaintiff has had an opportunity to depose Defendants and many of the relevant witnesses, and before Defendants have disclosed documents in their possession or have provided fulsome responses to relevant discovery requests. Contention interrogatories at the outset of litigation are inappropriate. *See, e.g., In re Peregrine Fin. Grp. Customer Litig.*, 2015 WL 1344466, at *4 (N.D. Ill. Mar. 20, 2015) (citing *Ziemack v. Centel Corp.*, 1995 WL 729295, at *2 (N.D. Ill. Dec. 7, 1995)) ("The general policy is to defer contention Interrogatories until discovery is near an end, in order to promote efficiency and fairness."). Further, contention interrogatories should be limited to asking for material or principal facts, rather than asking for the party to set forth their entire case. *Am. Needle, Inc. v. New Orleans*, No. 04 C 7806, 2012 WL 4327395, at *2 (N.D. Ill. Aug. 17, 2012) (citing *IBP, Inc. v. Mercantile Bank*, 179 F.R.D. 316, 321 (D. Kan. 1998) ("[t]o the extent [the contention interrogatories] ask for every fact and every application of law to fact which supports the identified allegations, the court finds them

29

overly broad and unduly burdensome. An interrogatory may reasonably ask for the material or principal facts which support a contention."). Plaintiff further objects to this interrogatory because information responsive to this inquiry is principally in the possession, custody, or control of Defendants. Finally, Plaintiff objects to the extent that this Interrogatory calls for information protected by the attorney-client, work-product, or other common-law and statutory privileges.

Subject to and without waiving those objections, Plaintiff responds that he has prepared an extensive amended complaint that alleges in detail how each of the Defendants, including Defendant Halloran, acted individually and in conspiracy with one another to conceal and withhold exculpatory evidence from Leonard Logan, his defense counsel, and the State's Attorney's Office; to fabricate false evidence against Leonard Logan implicating him in a crime he had not committed; to use psychological abuse to coerce a false statement by a third party, LaTonya Payton; and to prosecute Leonard Logan without any probable cause to believe that he had committed the murder of Timothy Jones. *See* Amended Complaint ¶¶ 1-10, 31-90.

Plaintiff specifically alleges that, as part of the investigative team, Defendant Halloran, acting in conspiracy with the other Defendants, and others still unknown to Plaintiff, fabricated evidence in order to connect Leonard Logan to the crime, including false police reports and witness statements regarding Leonard Logan's purported connection to the crime, location at the time of the crime, and character; manufactured false witness testimony that was used to implicate Leonard Logan; and psychologically abused a third party, LaTonya Payton, to coerce a false inculpatory statement; and then suppressed that information during criminal proceedings; covered up their misconduct and destroyed or suppressed additional evidence that would have exculpated Leonard Logan, hiding that information from Leonard Logan, his attorneys, and other state prosecutors; presented false evidence to other state prosecutors and judicial authorities in order to secure and

continue charges against Leonard Logan; and provided false reports, statements, and testimony in order to implicate Leonard Logan in a crime he had not committed. More specifically, Defendants, including Defendant Halloran, knew that Leonard Logan was not involved in any way in the murder of Timothy Jones but Defendants, including Defendant Halloran, subjected a third party, LaTonya Payton, to overwhelming psychological abuse over a period of three days in order to extract a false statement from her, which was the only means by which they were able to get anyone to falsely implicate Plaintiff in a crime he did not commit. Defendants also fabricated additional evidence to bolster their case against Leonard Logan, including, but not limited to, LaTonya Payton's supposed identification of Leonard Logan, and Defendants harassed Plaintiff's family and fabricated additional evidence from them in order to frame Plaintiff. Defendants suppressed their fabrication of LaTonya Payton's false inculpatory statements and identification, their fabrication of the statements made by Plaintiff's family, and the unduly suggestive and manipulative tactics that Defendants used to get a false positive identification of Plaintiff from a witness.

Answering further, Plaintiff states that Defendants engaged in this misconduct even though there was absolutely no evidence (forensic, eyewitness, circumstantial, character, or otherwise), apart from that evidence fabricated by Defendants, that connected Leonard Logan to the murder of Timothy Jones. On the contrary, there was ample evidence that the crime was committed by a completely different suspect—someone shorter and lighter than Plaintiff, and someone who matched the physical description given by witnesses at the scene. Plaintiff states that to the best of his current knowledge, the Defendants, including Defendant Halloran, fabricated and suppressed evidence as described above, interviewed witnesses, coerced LaTonya Payton, engaged in unduly

31

suggestive and manipulative identification procedures, falsely testified against him, and secured Leonard Logan's arrest and charges against him.

Plaintiff additionally states that Defendant Halloran, along with other Defendant Officers, subjected Payton to repeated interrogation and polygraph examinations over three days. Defendant Halloran, along with other Defendant Officers, denied Payton food, water, and sleep, as well as requests for a lawyer or a phone call, in order to force her to repeat their false narrative implicating Plaintiff. Defendant Halloran, along with other Defendant Officers, knew that Plaintiff was innocent but fabricated Payton's false statements implicating Plaintiff. Defendant Halloran also documented this false statement by Payton in a fabricated police report. Defendant Halloran, along with other Defendant Officers, suppressed their fabrication of Payton's statements and their coercion of Payton. Defendant Halloran also procured supposed eyewitness identifications of Plaintiff using unduly suggestive lineup techniques. Plaintiff additionally states that Defendant Halloran, along with other Defendant Officers, fabricated police reports purporting to document interviews of Plaintiff's friends and family in order to frame him for the murder, and even though he knew the fabricated information was false. Defendant Halloran suppressed his knowledge of this fabrication.

In addition, Plaintiff directs Defendants to the documents he has produced. Plaintiff's investigation into this matter continues, and he reserves the right to supplement or modify this answer as new information comes to light.

**Interrogatory No. 13:** Identify what conduct you attribute to Defendant Al-Amin which you claim led to your arrest, prosecution, and conviction for the murder of Timothy Jones and the basis for you to make that claim.

**First Supplemental Response:** Plaintiff objects to this interrogatory as vague, ambiguous, overly broad, and unduly burdensome, including to the extent it is asking for each piece of conduct

32

Plaintiff attributes to Defendant Al-Amin that led to Plaintiff's wrongful arrest, prosecution, conviction, and imprisonment. Plaintiff further objects to this interrogatory as it is being propounded at the outset of discovery, before Plaintiff has had an opportunity to depose Defendants and many of the relevant witnesses, and before Defendants have disclosed documents in their possession or have provided fulsome responses to relevant discovery requests. Contention interrogatories at the outset of litigation are inappropriate. *See, e.g., In re Peregrine Fin. Grp. Customer Litig*., 2015 WL 1344466, at *4 (N.D. Ill. Mar. 20, 2015) (citing *Ziemack v. Centel Corp*., 1995 WL 729295, at *2 (N.D. Ill. Dec. 7, 1995)) ("The general policy is to defer contention Interrogatories until discovery is near an end, in order to promote efficiency and fairness."). Further, contention interrogatories should be limited to asking for material or principal facts, rather than asking for the party to set forth their entire case. *Am. Needle, Inc. v. New Orleans*, No. 04 C 7806, 2012 WL 4327395, at *2 (N.D. Ill. Aug. 17, 2012) (citing *IBP, Inc. v. Mercantile Bank*, 179 F.R.D. 316, 321 (D. Kan. 1998) ("[t]o the extent [the contention interrogatories] ask for every fact and every application of law to fact which supports the identified allegations, the court finds them overly broad and unduly burdensome. An interrogatory may reasonably ask for the material or principal facts which support a contention."). Plaintiff further objects to this interrogatory because information responsive to this inquiry is principally in the possession, custody, or control of Defendants. Finally, Plaintiff objects to the extent that this Interrogatory calls for information protected by the attorney-client, work-product, or other common-law and statutory privileges.

Subject to and without waiving those objections, Plaintiff responds that he has prepared an extensive amended complaint that alleges in detail how each of the Defendants, including Defendant Al-Amin, acted individually and in conspiracy with one another to conceal and withhold exculpatory evidence from Leonard Logan, his defense counsel, and the State's Attorney's Office;

to fabricate false evidence against Leonard Logan implicating him in a crime he had not committed; to use psychological abuse to coerce a false statement by a third party, LaTonya Payton; and to prosecute Leonard Logan without any probable cause to believe that he had committed the murder of Timothy Jones. *See* Amended Complaint ¶¶ 1-10, 31-90.

Plaintiff specifically alleges that, as part of the investigative team, Defendant Al-Amin, acting in conspiracy with the other Defendants, and others still unknown to Plaintiff, fabricated evidence in order to connect Leonard Logan to the crime, including false police reports and witness statements regarding Leonard Logan's purported connection to the crime, location at the time of the crime, and character; manufactured false witness testimony that was used to implicate Leonard Logan; and psychologically abused a third party, LaTonya Payton, to coerce a false inculpatory statement; and then suppressed that information during criminal proceedings; covered up their misconduct and destroyed or suppressed additional evidence that would have exculpated Leonard Logan, hiding that information from Leonard Logan, his attorneys, and other state prosecutors; presented false evidence to other state prosecutors and judicial authorities in order to secure and continue charges against Leonard Logan; and provided false reports, statements, and testimony in order to implicate Leonard Logan in a crime he had not committed. More specifically, Defendants, including Defendant Al-Amin, knew that Leonard Logan was not involved in any way in the murder of Timothy Jones but Defendants, including Defendant Al-Amin, subjected a third party, LaTonya Payton, to overwhelming psychological abuse over a period of three days in order to extract a false statement from her, which was the only means by which they were able to get anyone to falsely implicate Plaintiff in a crime he did not commit. Defendants also fabricated additional evidence to bolster their case against Leonard Logan, including, but not limited to, LaTonya Payton's supposed identification of Leonard Logan, and Defendants harassed Plaintiff's family

and fabricated additional evidence from them in order to frame Plaintiff. Defendants suppressed their fabrication of LaTonya Payton's false inculpatory statements and identification, their fabrication of the statements made by Plaintiff's family, and the unduly suggestive and manipulative tactics that Defendants used to get a false positive identification of Plaintiff from a witness.

Answering further, Plaintiff states that Defendants engaged in this misconduct even though there was absolutely no evidence (forensic, eyewitness, circumstantial, character, or otherwise), apart from that evidence fabricated by Defendants, that connected Leonard Logan to the murder of Timothy Jones. On the contrary, there was ample evidence that the crime was committed by a completely different suspect—someone shorter and lighter than Plaintiff, and someone who matched the physical description given by witnesses at the scene. Plaintiff states that to the best of his current knowledge, the Defendants, including Defendant Al-Amin, fabricated and suppressed evidence as described above, interviewed witnesses, coerced LaTonya Payton, engaged in unduly suggestive and manipulative identification procedures, falsely testified against him, and secured Leonard Logan's arrest and charges against him.

Plaintiff additionally states that Defendant Al-Amin, along with other Defendant Officers, falsified inculpatory information against Plaintiff, including the circumstances of his arrest. This fabrication was used against Plaintiff at his trial.

In addition, Plaintiff directs Defendants to the documents he has produced. Plaintiff's investigation into this matter continues, and he reserves the right to supplement or modify this answer as new information comes to light.

**Interrogatory No. 14:** Identify what conduct you attribute to Defendant Rowan which you claim led to your arrest, prosecution, and conviction for the murder of Timothy Jones and the basis for you to make that claim.

**First Supplemental Response:** Plaintiff objects to this interrogatory as vague, ambiguous, overly broad, and unduly burdensome, including to the extent it is asking for each piece of conduct Plaintiff attributes to Defendant Rowan that led to Plaintiff's wrongful arrest, prosecution, conviction, and imprisonment. Plaintiff further objects to this interrogatory as it is being propounded at the outset of discovery, before Plaintiff has had an opportunity to depose Defendants and many of the relevant witnesses, and before Defendants have disclosed documents in their possession or have provided fulsome responses to relevant discovery requests. Contention interrogatories at the outset of litigation are inappropriate. *See, e.g., In re Peregrine Fin. Grp. Customer Litig.*, 2015 WL 1344466, at *4 (N.D. Ill. Mar. 20, 2015) (citing *Ziemack v. Centel Corp.*, 1995 WL 729295, at *2 (N.D. Ill. Dec. 7, 1995)) ("The general policy is to defer contention Interrogatories until discovery is near an end, in order to promote efficiency and fairness."). Further, contention interrogatories should be limited to asking for material or principal facts, rather than asking for the party to set forth their entire case. *Am. Needle, Inc. v. New Orleans*, No. 04 C 7806, 2012 WL 4327395, at *2 (N.D. Ill. Aug. 17, 2012) (citing *IBP, Inc. v. Mercantile Bank*, 179 F.R.D. 316, 321 (D. Kan. 1998) ("[t]o the extent [the contention interrogatories] ask for every fact and every application of law to fact which supports the identified allegations, the court finds them overly broad and unduly burdensome. An interrogatory may reasonably ask for the material or principal facts which support a contention."). Plaintiff further objects to this interrogatory because information responsive to this inquiry is principally in the possession, custody, or control of Defendants. Finally, Plaintiff objects to the extent that this Interrogatory calls for information protected by the attorney-client, work-product, or other common-law and statutory privileges.

Subject to and without waiving those objections, Plaintiff responds that he has prepared an extensive amended complaint that alleges in detail how each of the Defendants, including

Defendant Rowan, acted individually and in conspiracy with one another to conceal and withhold exculpatory evidence from Leonard Logan, his defense counsel, and the State's Attorney's Office; to fabricate false evidence against Leonard Logan implicating him in a crime he had not committed; to use psychological abuse to coerce a false statement by a third party, LaTonya Payton; and to prosecute Leonard Logan without any probable cause to believe that he had committed the murder of Timothy Jones. *See* Amended Complaint ¶¶ 1-10, 31-90.

Plaintiff specifically alleges that, as part of the investigative team, Defendant Rowan, acting in conspiracy with the other Defendants, and others still unknown to Plaintiff, fabricated evidence in order to connect Leonard Logan to the crime, including false police reports and witness statements regarding Leonard Logan's purported connection to the crime, location at the time of the crime, and character; manufactured false witness testimony that was used to implicate Leonard Logan; and psychologically abused a third party, LaTonya Payton, to coerce a false inculpatory statement; and then suppressed that information during criminal proceedings; covered up their misconduct and destroyed or suppressed additional evidence that would have exculpated Leonard Logan, hiding that information from Leonard Logan, his attorneys, and other state prosecutors; presented false evidence to other state prosecutors and judicial authorities in order to secure and continue charges against Leonard Logan; and provided false reports, statements, and testimony in order to implicate Leonard Logan in a crime he had not committed. More specifically, Defendants, including Defendant Rowan, knew that Leonard Logan was not involved in any way in the murder of Timothy Jones but Defendants, including Defendant Rowan, subjected a third party, LaTonya Payton, to overwhelming psychological abuse over a period of three days in order to extract a false statement from her, which was the only means by which they were able to get anyone to falsely implicate Plaintiff in a crime he did not commit. Defendants also fabricated additional evidence to

bolster their case against Leonard Logan, including, but not limited to, LaTonya Payton's supposed identification of Leonard Logan, and Defendants harassed Plaintiff's family and fabricated additional evidence from them in order to frame Plaintiff. Defendants suppressed their fabrication of LaTonya Payton's false inculpatory statements and identification, their fabrication of the statements made by Plaintiff's family, and the unduly suggestive and manipulative tactics that Defendants used to get a false positive identification of Plaintiff from a witness.

Answering further, Plaintiff states that Defendants engaged in this misconduct even though there was absolutely no evidence (forensic, eyewitness, circumstantial, character, or otherwise), apart from that evidence fabricated by Defendants, that connected Leonard Logan to the murder of Timothy Jones. On the contrary, there was ample evidence that the crime was committed by a completely different suspect—someone shorter and lighter than Plaintiff, and someone who matched the physical description given by witnesses at the scene. Plaintiff states that to the best of his current knowledge, the Defendants, including Defendant Rowan, fabricated and suppressed evidence as described above, interviewed witnesses, coerced LaTonya Payton, engaged in unduly suggestive and manipulative identification procedures, falsely testified against him, and secured Leonard Logan's arrest and charges against him.

Plaintiff additionally states that Defendant Rowan, along with other Defendant Officers, fabricated police reports purporting to document interviews of Plaintiff's friends and family in order to frame him for the murder, and even though he knew the fabricated information was false. Defendant Rowan suppressed his knowledge of this fabrication.

In addition, Plaintiff directs Defendants to the documents he has produced. Plaintiff's investigation into this matter continues, and he reserves the right to supplement or modify this answer as new information comes to light.

**Interrogatory No. 16:** Identify every piece of evidence that you claim was fabricated against you. For this interrogatory identify means to state the piece of evidence that was fabricated, who fabricated the evidence, how the evidence was fabricated, and when you learned that it was fabricated.

      **First Supplemental Response:** Subject to and without waiving Plaintiff's objections to this interrogatory and his general objections, Plaintiff expressly incorporates his objections and supplemental responses to Defendant Rowan's Interrogatory Nos. 4-14, above.

      Plaintiff specifically alleges that Defendants, and others still unknown to Plaintiff, fabricated evidence in order to connect Leonard Logan to the crime, including false police reports and witness statements regarding Leonard Logan's purported connection to the crime, location at the time of the crime, and character; manufactured false witness testimony that was used to implicate Leonard Logan; and psychologically abused a third party, LaTonya Payton, to coerce a false inculpatory statement; and then suppressed that information during criminal proceedings; covered up their misconduct and destroyed or suppressed additional evidence that would have exculpated Leonard Logan, hiding that information from Leonard Logan, his attorneys, and other state prosecutors; presented false evidence to other state prosecutors and judicial authorities in order to secure and continue charges against Leonard Logan; and provided false reports, statements, and testimony in order to implicate Leonard Logan in a crime he had not committed. More specifically, Defendants knew that Leonard Logan was not involved in any way in the murder of Timothy Jones but Defendants subjected a third party, LaTonya Payton, to overwhelming psychological abuse over a period of three days in order to extract a false statement from her, which was the only means by which they were able to get anyone to falsely implicate Plaintiff in a crime he did not commit. Defendants also fabricated additional evidence to bolster their case against Leonard Logan, including, but not limited to, LaTonya Payton's supposed identification of Leonard Logan, and Defendants harassed Plaintiff's family and fabricated additional evidence

from them in order to frame Plaintiff. Defendants suppressed their fabrication of LaTonya Payton's false inculpatory statements and identification, their fabrication of the statements made by Plaintiff's family, and the unduly suggestive and manipulative tactics that Defendants used to get a false positive identification of Plaintiff from a witness.

Answering further, Plaintiff states that Defendants engaged in this misconduct even though there was absolutely no evidence (forensic, eyewitness, circumstantial, character, or otherwise), apart from that evidence fabricated by Defendants, that connected Leonard Logan to the murder of Timothy Jones. On the contrary, there was ample evidence that the crime was committed by a completely different suspect—someone shorter and lighter than Plaintiff, and someone who matched the physical description given by witnesses at the scene. Plaintiff states that to the best of his current knowledge, the Defendants fabricated and suppressed evidence as described above, interviewed witnesses, coerced LaTonya Payton, engaged in unduly suggestive and manipulative identification procedures, falsely testified against him, and secured Leonard Logan's arrest and charges against him.

In short, Plaintiff further states that Defendants fabricated numerous pieces of evidence against him, including Payton's false statements, purported witness identifications of Plaintiff, inculpatory witness statements from Plaintiff's friends and family, police reports reflecting witness interviews, and other pieces of inculpatory evidence as described above. Plaintiff did not learn of this fabrication until after he was wrongfully convicted.

In addition, Plaintiff directs Defendants to the documents he has produced. Plaintiff's investigation into this matter continues, and he reserves the right to supplement or modify this answer as new information comes to light.

**Interrogatory No. 21:** Identify all exculpatory evidence that you claim was withheld from you prior to your criminal trial. For this interrogatory, identify means to describe the evidence, state the author of the document, state the basis for your belief that the evidence is exculpatory, provide the date you first became aware of the existence of the evidence, state the name of the person from whom you learned of the existence of the evidence, and state which defendant withheld the evidence.

       **First Supplemental Response:** Subject to and without waiving Plaintiff's objections to this interrogatory and his general objections, Plaintiff expressly incorporates his objections and supplemental response to Defendant Rowan's Interrogatory Nos. 4-14, 16, above.

       Plaintiff specifically alleges that Defendants, and others still unknown to Plaintiff, fabricated evidence in order to connect Leonard Logan to the crime, including false police reports and witness statements regarding Leonard Logan's purported connection to the crime, location at the time of the crime, and character; manufactured false witness testimony that was used to implicate Leonard Logan; and psychologically abused a third party, LaTonya Payton, to coerce a false inculpatory statement; and then suppressed that information during criminal proceedings; covered up their misconduct and destroyed or suppressed additional evidence that would have exculpated Leonard Logan, hiding that information from Leonard Logan, his attorneys, and other state prosecutors; presented false evidence to other state prosecutors and judicial authorities in order to secure and continue charges against Leonard Logan; and provided false reports, statements, and testimony in order to implicate Leonard Logan in a crime he had not committed. More specifically, Defendants knew that Leonard Logan was not involved in any way in the murder of Timothy Jones but Defendants subjected a third party, LaTonya Payton, to overwhelming psychological abuse over a period of three days in order to extract a false statement from her, which was the only means by which they were able to get anyone to falsely implicate Plaintiff in a crime he did not commit. Defendants also fabricated additional evidence to bolster their case against Leonard Logan, including, but not limited to, LaTonya Payton's supposed identification of

41

Leonard Logan, and Defendants harassed Plaintiff's family and fabricated additional evidence from them in order to frame Plaintiff. Defendants suppressed their fabrication of LaTonya Payton's false inculpatory statements and identification, their fabrication of the statements made by Plaintiff's family, and the unduly suggestive and manipulative tactics that Defendants used to get a false positive identification of Plaintiff from a witness.

Answering further, Plaintiff states that Defendants engaged in this misconduct even though there was absolutely no evidence (forensic, eyewitness, circumstantial, character, or otherwise), apart from that evidence fabricated by Defendants, that connected Leonard Logan to the murder of Timothy Jones. On the contrary, there was ample evidence that the crime was committed by a completely different suspect—someone shorter and lighter than Plaintiff, and someone who matched the physical description given by witnesses at the scene. Plaintiff states that to the best of his current knowledge, the Defendants fabricated and suppressed evidence as described above, interviewed witnesses, coerced LaTonya Payton, engaged in unduly suggestive and manipulative identification procedures, falsely testified against him, and secured Leonard Logan's arrest and charges against him.

Plaintiff further states that Defendants suppressed their fabrication of Payton's statements and identifications against him, as well as suppressed her exculpatory statements. In addition, Defendants suppressed their fabrication of other witness statements—including statements purportedly made by Plaintiff's friends and family—as well as their exculpatory statements. Defendants also suppressed their fabrication of purported identifications of Plaintiff via unduly suggestive identification procedures, as well as exculpatory evidence from those procedures. Plaintiff further states that Defendants suppressed their fabrication of other inculpatory evidence— including the circumstances around his arrest.

In addition, Plaintiff directs Defendants to the documents he has produced. Plaintiff's investigation into this matter continues, and he reserves the right to supplement or modify this answer as new information comes to light.

**Interrogatory No. 23:** Identify all criminal activity you have engaged in, if any, since your conviction for the murder of Timothy Jones was vacated. For this interrogatory, identify means to describe the criminal activity engaged in, state the date and location you engaged in the criminal activity, and state the name of any other person who engaged in the criminal activity with you.

**First Supplemental Response:** Plaintiff objects to this interrogatory on the grounds that it seeks irrelevant and wholly inadmissible evidence and lacks any reasonable temporal limit. Plaintiff objects that this interrogatory is compound and includes multiple questions and subparts that are properly set forth in multiple interrogatories. Plaintiff further objects because the information relevant to this interrogatory is principally in the possession, custody, or control of the Defendants. Plaintiff also objects to this interrogatory as vague and overbroad in that it asks him to identify all "criminal activity" he has engaged in since his conviction was vacated. Subject to and without waiving any objection, Plaintiff states that he was convicted of a drug offense in Iowa in 2023.

**Interrogatory No. 25:** Identify any gangs you have associated with. For this interrogatory, identify means to state the name of the gang, the time period you associated with the gang, whether you held any rank in the gang, and if so, what was the rank, describe the activities you engaged in for the gang, state the names of all individuals who you knew were also associated with your gang, and state the names of any rival gangs.

**First Supplemental Response:** Plaintiff objects to this interrogatory on the basis that it seeks information that is irrelevant, not reasonably limited in time and/or scope, disproportionate to the needs of the case, and on the basis that it is harassing. Plaintiff further objects to the interrogatory as vague in that it does not define "associated." Subject to and without waiving any objection, Plaintiff states that he has never been an initiated member of any gang.

RESPECTFULLY SUBMITTED,

**LEONARD LOGAN**

/s/ Alyssa Martinez
*One of Plaintiff's Attorneys*

Jon Loevy                          Elizabeth Wang
Tara Thompson                      LOEVY & LOEVY
Jordan Poole                       2060 Broadway, Ste. 460
Alyssa Martinez                    Boulder, CO 80302
LOEVY & LOEVY                      720-328-5642
311 N. Aberdeen St., 3rd Fl.       elizabethw@loevy.com
Chicago, IL 60607
312-243-5900
alyssa@loevy.com

44

## **CERTIFICATE OF SERVICE**

I, Alyssa Martinez, an attorney, hereby certify that on January 29, 2025, I served the

foregoing document upon all counsel of record via electronic mail.

/s/ Alyssa Martinez
*One of Plaintiff's Attorneys*

45