UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LEONARD LOGAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 24-cv-03897 |
| | ) | |
| v. | ) | Hon. Franklin U. Valderrama |
| | ) | District Judge |
| | ) | |
| CITY OF CHICAGO, *et al.,* | ) | Hon. Young B. Kim |
| | ) | Magistrate Judge |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER
REGARDING DEFENDANTS' THIRD-PARTY SUBPOENAS**

Plaintiff Leonard Logan, by and through counsel, respectfully moves for a protective

order limiting the scope of three third-party subpoenas issued by Defendants to the Mt. Pleasant

Correctional Facility, Polk County Jail, and the Des Moines Police Department. In support,

Plaintiff states as follows:

**INTRODUCTION**

Defendants have served three sweeping third-party subpoenas seeking broad categories of

prison, jail, and law-enforcement records relating to Plaintiff's life decades after the wrongful

conviction at issue in this case. The subpoenas seek disciplinary records, housing assignments,

grievances, correspondence, gang intelligence files, commissary and trust-account records, and

records relating to Plaintiff's post-release arrests and interactions with law enforcement—in an

apparent attempt to delve into nearly every aspect of Plaintiff's post-conviction life.

The problem is that none of these records has any meaningful connection to the issues to

be decided in this case. This action concerns Defendants' conduct during the homicide

investigation and prosecution that resulted in Plaintiff's wrongful conviction. Yet the subpoenas

1

are directed entirely at events occurring decades after those events. Defendants offer no non-speculative basis to believe that these records contain information relevant to any claim, defense, or damages in this case nor do they explain why such expansive discovery is necessary.

The subpoenas are also remarkable in their breadth. Rather than seek targeted categories of information tied to a particular issue, Defendants demand entire classes of correctional, financial, institutional, and law-enforcement records. The requests are untethered to the claims in the case and would expose highly personal information while imposing substantial burdens on non-parties, all based on little more than the possibility that something useful might be found.

Perhaps most significantly, the subpoenas seek precisely the type of post-conviction information this Court has already determined falls outside the proper scope of discovery. Having failed to obtain that discovery directly, Defendants now attempt to obtain substantially the same information through third-party subpoenas. Rule 26 does not permit such an end-run around the Court's prior ruling.

Because Defendants' subpoenas seek irrelevant information, are grossly overbroad and disproportionate to the needs of the case, and disregard this Court's prior discovery ruling, the Court should enter a protective order prohibiting production of the requested records outside of the explicit categories Plaintiff has agreed to.

## RELEVANT FACTUAL BACKGROUND

On April 2, 2025, the parties appeared before the Court to address a discovery dispute concerning the proper scope of discovery into Plaintiff's criminal history following his release from the Illinois Department of Corrections ("IDOC") for the wrongful conviction at issue in this case. The Court reviewed the parties' respective positions as set forth in the joint status report, ECF No. 86, and heard oral argument, ECF Nos. 88, 101.

Plaintiff argued that information concerning his subsequent criminal history following his release for the Jones murder was irrelevant to any claim, defense, or damages in this civil action. Defendants did not dispute that the information was not relevant to any claim or defense but argued it was relevant to damages. After hearing argument, the Court rejected Defendants' position and held that the information Plaintiff had already provided concerning his subsequent conviction was sufficient, and that Defendants were not entitled to additional discovery on that subject. ECF No. 101 at 20–23. The Court further found there was no "link between so-called lifestyle after [Plaintiff]'s release[] and his damages." *Id*. at 22.

Notwithstanding the Court's ruling, on March 23, 2026, Defendants served notice of intent to issue three third-party subpoenas seeking records relating to Plaintiff's post-release arrest, incarceration, and interactions with law enforcement. The subpoenas were directed to Mt. Pleasant Correctional Center (Exhibit A), Polk County Jail (Exhibit B), and the Des Moines Police Department (Exhibit C).

The subpoena to Mt. Pleasant Correctional Center sought virtually every category of record related to Plaintiff, including his complete institutional file, disciplinary records, housing assignments, educational and work records, certificates and awards, telephone and visitor logs, grievances, gang intelligence files, movement logs, internal investigations, incident reports, protective custody files, social worker and chaplain records, commissary and trust account records, photographs, correspondence, and medical and mental health records. Ex. A.

The subpoena to Polk County Jail similarly sought broad categories of records, including intake and release records, housing assignments, intake forms, incident reports, telephone logs, disciplinary records, and grievances. Ex. B.

3

The subpoena to the Des Moines Police Department sought "[a]ny and all law enforcement and court records" relating to Plaintiff's February 1, 2023 arrest, as well as records relating to "all other arrests, warrant[s], investigative stops and traffic stops," including written reports, booking photographs, intake records, electronic data, and audio and video recordings. Ex. C.

Plaintiff promptly objected to the subpoenas and issued a letter to Defendants making his objections clear.[1] *See* Exhibit H. In response, Defendants modified the Mt. Pleasant Correctional Center (Exhibit D) and Polk County Jail (Exhibit E) subpoenas, but continued to seek expansive categories of records, including disciplinary records, housing records, visitor logs, grievances, correspondence, gang intelligence files, commissary and inmate trust account records, and commissary records from both agencies. Defendants refused to narrow the subpoena to the Des Moines Police Department in any respect.

Plaintiff again objected to the issuance of the subpoenas, and the parties met and conferred on May 5, 2026, and May 22, 2026. In the spirit of compromise, Plaintiff agreed to the discovery of the only portion of the subpoenas that was arguably relevant to this case: the call logs and visitor logs. Defendants did not agree to limit the subpoenas and issued them on May 22, 2026. Plaintiff raised the issue during the discovery status conference held on May 26, 2026, and the Court granted Plaintiff until June 5, 2026, to file a motion for a protective order.

---

[1] However, Plaintiff did agree to Defendants issuing a subpoena to Mt. Pleasant Correctional Center for Plaintiff's medical and mental health records. Defendants thus issued a separate subpoena for "Any and all medical and mental health care records" for Plaintiff, "including but not limited to the following: Medical intake; in-patient records, out-patient records, reports; tests and test results; consultant reports; histories; lab reports; physician or nurses notes; charts; graphs; correspondence; medical progress notes; medical records; physician or nursing orders; prescriptions; imaging studies; therapy notes; physical, mental health intake, mental health assessment; treatment notes and medication administration records." Exhibit G.

4

## LEGAL STANDARD

The "scope of discovery" is not unlimited. Fed. R. Civ. P. 26(b)(1). Under Federal Rule of Civil Procedure 26, parties may obtain discovery only to the extent it is relevant to any party's claim or defense and proportional to the needs of the case, considering factors such as the importance of the discovery, the needs of the case, and whether the burden or expense outweighs the likely benefit. Fed. R. Civ. P. 26(b)(1). The Federal Rules further require courts to limit discovery if "the proposed discovery is outside the scope permitted." Fed. R. Civ. P. 26(b)(2)(C)(iii). When a party proposes a subpoena seeking records that are beyond the scope of discovery, the opposing party can enforce this limitation with a motion for a protective order asking that the subpoena be disallowed. *Id.*; *see also Treadwell v. Salgado*, No. 19-CV-3179, 2021 WL 11725352, at *2 (N.D. Ill. Dec. 14, 2021); *Liebich v. DelGiudice*, No. 20-CV-2368, 2021 WL 12302694, at *4 (N.D. Ill. Apr. 27, 2021); Exhibit F (*Gillespie v. Boudreau* Slip Op.).

"The relevance and proportionality limits in Rule 26 that guide the proper scope of discovery apply with equal force to nonparty discovery under Rule 45." *DeLeon-Reyes v. Guevara*, No. 18-CV-1028, 2020 WL 3050230, at *3 (N.D. Ill. June 8, 2020) (citing *Noble Roman's, Inc. v. Hatenhauer Distrib. Co.*, 314 F.R.D. 304, 307-08 (S.D. Ind. 2016)). Under Rule 45, the Court must also modify a subpoena that subjects a person to "undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). For the purpose of this rule, a subpoena may subject a person to an "undue burden" if his privacy interests are implicated by the subpoena. *Jump v. Montgomery Cty.*, No. 13-3084, 2015 WL 6558851 (C.D. Ill. Oct. 29, 2015); *see also DeLeon-Reyes*, 2020 WL 7059444, at *2 (N.D. Ill. Dec. 2, 2020). "When a party objects to a subpoena under Rule 45, the subpoenaing party must justify its pursuit." *Wilson v. O'Brien*, 07-CV-3994, 2009 WL 763785, *7 (N.D. Ill. 2009) (alterations and internal quotation marks omitted).

**ARGUMENT**

Plaintiff objects to the aspects of Defendants' subpoenas that seek irrelevant information about the circumstances of Plaintiff's Iowa incarceration, and that seek to delve into the details of Plaintiff's Iowa conviction when Defendants already have a significant amount of information about how Plaintiff came to be convicted in that case. These aspects of Defendants' subpoenas are improper for three independent reasons. First, the records sought have no relevance to any claim or defense in this wrongful-conviction case. Second, even if some marginal relevance could be imagined, the subpoenas are grossly overbroad and disproportionate to the needs of the case, seeking years of highly personal information based on nothing more than speculation that something useful might turn up. Third, the subpoenas represent an improper attempt to obtain through third parties the very type of post-conviction records this Court has already determined are not discoverable. For each of these reasons, the Court should enter a protective order preventing production of the requested records outside of those explicitly agreed to by Plaintiff.

**A. The Requested Records Are Irrelevant to the Claims and Defenses in This Wrongful Conviction Case**

The subpoenas at issue seek records that have no conceivable connection to any claim or defense in this case. This is a wrongful conviction action. The issues for trial concern Defendants' conduct during the investigation, prosecution, and conviction of Plaintiff—not Plaintiff's conduct or carceral conditions decades later after his release. Yet Defendants seek expansive categories of prison, jail, and police records without identifying any theory under which those materials could make any fact in this litigation more or less probable.

The disconnect between the requested records and the issues in this case is obvious. Whether Plaintiff received a disciplinary infraction while incarcerated, where he was housed, whether he filed grievances, what items he purchased from commissary, who deposited money

6

into a trust account, or whether prison officials maintained alleged gang intelligence files about him has nothing to do with whether Defendants violated Plaintiff's constitutional rights. Likewise, Defendants have not explained how records relating to a 2023 arrest—occurring nearly three decades after the events underlying this lawsuit—could shed light on Defendants' conduct during the investigation and prosecution that resulted in Plaintiff's wrongful conviction.

That failure is fatal because relevance is a threshold requirement of discovery. Rule 26 does not authorize parties to rummage through years of a litigant's personal history in the hope that something useful might emerge. Nor does Rule 45 permit subpoenas untethered from any claim or defense. *See Third Degree Films, Inc. v. Does 1-2010*, No. 4:11-MC-2, 2011 WL 4759283, at *1 (N.D. Ind. Oct. 6, 2011) ("[I]mplicit in the rule is the requirement that a subpoena seek relevant information.").

Notably, Plaintiff has not taken an absolutist position. In an effort to avoid unnecessary motion practice, Plaintiff agreed to the production of visitor logs and call logs, and had previously not objected to a subpoena for Plaintiff's medical records. Plaintiff also previously produced, and did not oppose a subpoena for, records from the Iowa Parole Board and other publicly available court records about Plaintiff's conviction in the Iowa case. Those categories capture the information Defendants have suggested they seek regarding Plaintiff's contacts and communications while incarcerated along with his physical and mental health, and the fundamental details of his later conviction. Defendants nevertheless insist on obtaining disciplinary records, housing records, grievances, correspondence, gang intelligence files, commissary records, trust-account records, and records concerning a 2023 arrest, and any other arrest by the Des Moines Police Department, despite offering no explanation as to why the information Plaintiff already agreed to is insufficient.

The reason for that omission is apparent: Defendants cannot articulate a non-speculative basis for the discovery they seek. Courts routinely reject discovery requests premised on little more than the hope that something useful might be found. *See, e.g., Simon v. Nw. Univ.*, No. 1:15-CV-1433, 2017 WL 66818, at *4 (N.D. Ill. Jan. 6, 2017) (denying defendant's subpoena seeking prison records without a showing that the records were relevant); *DeLeon-Reyes*, 2020 WL 7059444 (denying defendants' subpoena for prison records because defendants' claim of relevance was speculative); *Batchelor v. Merck & Co.*, No. 3:05-CV-791 JTM, 2007 WL 4179015, at *3 (N.D. Ind. Nov. 20, 2007) (denying defendants' motion to compel after determining that defendants were "merely 'fishing' for discovery"); *Franklin v. Howard Brown Health Center*, No. 17-CV-8376, 2018 WL 4590010, at *5 (N.D. Ill. Sept. 25, 2018) (explaining that the "absence of any basis for what the defendant hopes to turn up" in a discovery request is a fishing expedition unsupported by Rule 26); *Eternity Mart, Inc. v. Nature's Sources, LLC*, No. 19-CV-2436, 2019 WL 6052366, at *3 (N.D. Ill. Nov. 15, 2019) (barring discovery as a "fishing expedition" where "[t]he basis for these discovery requests is speculative, as evidenced by Nature's Sources statements about what the discovery sought 'could very well," or 'perhaps' show.").

Indeed, this case presents an even stronger basis for denying discovery because the issue is not whether marginal relevance is outweighed by burden. Rather, the requested records have no relevance at all. No claim or defense is implicated. Moreover, this Court has already determined that there is no link between Plaintiff's conviction that came nearly 30 years after the conduct at issue in this civil case and his claimed damages. ECF No. 101 at 22–23. Defendants' subpoenas simply ignore that conclusion.

Discovery is broad, but it is not limitless. As courts in this District have recognized, "[t]he discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest." *Vakharia v. Swedish Covenant Hosp.*, No. 90-CV-6548, 1994 WL 75055, at *2 (N.D. Ill. Mar. 9, 1994). Because Defendants have failed to establish any nexus between the subpoenaed records and the claims or defenses in this case, the Court should enter a protective order barring their production.

**B. The Requests Are Grossly Overbroad and Disproportionate to the Needs of the Case**

Even assuming some conceivable relevance could be articulated for a subset of the requested records, the subpoenas still fail because they are wildly disproportionate to the needs of this case. Rule 26 requires more than speculation that useful information might exist somewhere in a third party's files. A party seeking broad discovery must demonstrate that the likely value of the information justifies the burden and intrusion associated with obtaining it. A mere "speculative hope" that something helpful may turn up does not "outweigh[] the burden and expense" of producing years of third-party records. *Treadwell*, 2021 WL 11725352, at *4. Ex. F at 6. Nor can "conjecture about what the files may contain" justify sweeping subpoenas directed at a litigant's correctional and law-enforcement records. Ex. F at 6.

Yet that is precisely what Defendants seek here. The subpoenas demand entire categories of correctional and law-enforcement records, including disciplinary files, housing records, grievances, correspondence, gang intelligence files, commissary records, trust-account records, and records relating to an unrelated 2023 arrest. Defendants do not attempt to limit the requests by subject matter, nor do they explain why such expansive categories of information are necessary. Instead, they seek years of intensely personal records, presumably on the chance that something within them might assist their defense.

The proportionality analysis is particularly straightforward because the burden and intrusion are substantial while the likely value of the information is negligible. The records sought reveal highly personal aspects of Plaintiff's life, including his entire incarceration file, his communications with others, his financial transactions, grievances he filed, and institutional intelligence records maintained about him. Courts may properly consider a plaintiff's privacy interests when evaluating proportionality, and Plaintiff's privacy interests here are significant. *See Treadwell*, 2021 WL 11725352, at *4.

The decisions in *Gillespie* and *McClendon* illustrate why the subpoenas cannot stand. In *Gillespie v. Boudreau*, 24-cv-8019 (N.D. Ill. 2024), another wrongful-conviction case, defendants sought broad correctional records based on theories that the records might undermine witness credibility or reveal collusion. The court rejected those arguments as conjectural and held that such speculation was insufficient to justify the breadth of the requested discovery. Ex. F at 5-6. The same is true here. Defendants offer only speculation that the requested records may contain something useful, but speculation is not a substitute for relevance or proportionality.

Likewise, in *McClendon v. City of Chicago*, 345 F.R.D. 322 (N.D. Ill. 2024), the court rejected defendants' attempt to obtain expansive jail records based on little more than the assertion that "common sense" suggested the calls and correspondence might contain relevant information. *Id*. at 325. The court explained that defendants were required to provide "some specific assurance that there is a reasonable likelihood" the requested materials contained relevant evidence, rather than simply engaging in a fishing expedition. *Id*. Defendants have made no such showing here.

The breadth of the subpoenas further underscores their disproportionality. Defendants seek entire categories of records without meaningful temporal limitations and without tailoring

10

the requests to any specific issue in dispute. Such requests would require non-parties to collect and produce years of records while simultaneously exposing highly sensitive personal information that bears little, if any, relationship to the claims in this litigation. The burden and privacy intrusion associated with that production far outweigh any speculative evidentiary value.

Ultimately, Defendants bear the burden of demonstrating that the discovery they seek is both relevant and proportional. Ex. F at 6. They have not done so. They have offered no factual basis to believe these records contain information relevant to any claim or defense, no explanation why the information Plaintiff has already produced and subpoenas he has not objected to are insufficient, and no justification for the extraordinary breadth of the subpoenas. Under Rule 26, that is not enough.

This Court possesses broad discretion to limit discovery that exceeds the bounds of relevance and proportionality. *See Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Eng'rs, Inc.,* 755 F.3d 832, 839 (7th Cir. 2014). Because the subpoenas impose substantial burdens and invade significant privacy interests in pursuit of information whose value is, at best, speculative, the Court should enter a protective order and prohibit production of the requested records.

## C. Defendants Disregard This Court's Prior Ruling on This Issue

Perhaps most troubling, Defendants' subpoenas are an attempt to revisit a discovery issue this Court has already decided. Earlier in this litigation, Defendants sought discovery concerning Plaintiff's post-conviction conduct, criminal history, and subsequent interactions with law enforcement. The Court rejected those efforts, recognizing that the relevant inquiry in this case is Defendants' conduct during the investigation and prosecution that resulted in Plaintiff's

wrongful conviction—not Plaintiff's conduct decades later.[2] The Court further concluded that Plaintiff's subsequent criminal history and post-conviction conduct do not bear on the damages arising from the wrongful conviction at issue in this case. *See* ECF No. 101 at 22-23.

Rather than accept that ruling, Defendants now seek much of the same information through third-party subpoenas directed to correctional institutions and a police department. The change in mechanism does not change the analysis. Discovery that falls outside the scope of Rule 26 does not become discoverable simply because it is sought from a non-party. Nor may a litigant circumvent a prior discovery ruling by repackaging previously rejected requests as third-party subpoenas.

The subpoenas here illustrate precisely that problem. Defendants seek disciplinary records, housing records, grievances, correspondence, gang intelligence files, trust-account records, commissary records, and records concerning any and all arrests of Plaintiff following his release—all categories of information directed at Plaintiff's post-conviction life rather than the conduct that gave rise to this lawsuit. Yet Defendants never explain why records concerning Plaintiff's incarceration decades after the underlying events are suddenly relevant now when the Court has already determined that such post-conviction conduct has no bearing on the claims, defenses, and damages at issue.

Nor is there any meaningful distinction between the discovery previously rejected and the discovery sought here. The objective remains the same: to explore Plaintiff's subsequent history in search of information that might be used to diminish his damages or portray him negatively before a jury. But that is precisely the theory this Court has already rejected. Defendants cannot

---

[2] Of note, the Court reached the same conclusion as it pertains to Defendants' conduct after the wrongful conviction at issue when it denied discovery into Defendant Evans's criminal history. ECF No. 101 at 3-12.

accomplish indirectly through subpoenas what they could not obtain directly through party discovery.

Courts possess broad authority to enforce their discovery rulings and prevent parties from engaging in end-runs around prior orders. *See Thermal Design, Inc.,* 755 F.3d at 839. That authority is particularly important here, where Defendants seek records that this Court has already determined have no meaningful connection to Plaintiff's damages and no relevance to the issues to be decided by a jury. Allowing the subpoenas to proceed would effectively nullify the Court's earlier ruling and invite repetitive discovery disputes over issues that have already been resolved. It would also open up other rulings made by this Court, including the discoverability of *Defendants'* criminal conduct following the Jones homicide investigation.

Because the subpoenas seek information that falls squarely within the scope of discovery this Court has previously found irrelevant, the Court should enter a protective order and prohibit Defendants from obtaining through third parties what they are not entitled to obtain from Plaintiff himself.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter a protective order (1) limiting the subpoenas issued to the Mt. Pleasant Correctional Center and Polk County Jail to only the visitor logs and call logs that Plaintiff agreed to; (2) prohibiting the production of any other records from the Mt. Pleasant Correctional Center and Polk County Jail; (3) prohibiting the production of records from the Des Moines Police Department and/or quashing the subpoena; and (4) granting such other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED,

**LEONARD LOGAN**

*/s/ Alyssa Martinez*

Jon Loevy
Elizabeth Wang
Tara Thompson
Jordan Poole
Alyssa Martinez
Loevy & Loevy
311 N. Aberdeen Street
Chicago, IL 60607
312-243-5900
alyssa@loevy.com

*Attorneys for Plaintiff*

14

**CERTIFICATE OF SERVICE**

I, Alyssa Martinez, an attorney, hereby certify I filed the foregoing document on June 5, 2026 with the Court's CM/ECF system which effected service on all counsel of record.

/s/ Alyssa Martinez
One of Plaintiff's Attorneys