**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LEONARD LOGAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 24-cv-3897 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | Magistrate Judge Young B. Kim |
| Defendants. | ) | |

**DEFENDANT SINSON'S RESPONSE TO**
**PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER**

Defendant Kent Sinson responds to Plaintiff Logan's Motion for a Protective

Order Regarding Defendant's Third-Party Subpoenas, (dkt. 151), as follows:

## I.     Introduction

Logan initiated this litigation seeking damages for alleged psychological and

emotional harm he claims to suffer to this day. Having placed his mental and

emotional state squarely at issue, Logan cannot now shield from discovery the very

records that bear directly on those claims. Sinson's subpoenas seek a discrete set of

records—arrest records from the Des Moines Police Department and limited

categories of inmate records from Mt. Pleasant Correctional Facility and Polk

County Jail—related to his February 1, 2023, arrest and felony convictions.

Logan's motion fails for several reasons. *First*, the requested discovery is

relevant and proportional under Rule 26. Logan alleges far-reaching damages.

Records documenting Logan's behavior, housing placements, grievances, and

correspondence during his Iowa incarceration test whether these alleged damages

exist and, if so, whether they are attributable to the alleged 1997 wrongful conviction or to Logan's own post-release conduct. *Second*, Logan fails to establish "good cause" for a protective order under Rule 26(c). He offers only conclusory allegations of burden and privacy concerns without any supporting facts or articulation of specific harm. *Third*, the Court's prior ruling on Defendant Rowan's interrogatory does not bar this discovery. That ruling was based on an incomplete picture since Logan did not disclose that his "drug offense in Iowa" involved multiple felony convictions and a 20-year sentence. Now that the scope of Logan's 2023 arrest is known, Sinson is entitled to explore its relevance to damages.

Finally, the cases Logan relies upon are inapposite because they involved *non-party* records or recorded calls, neither of which is sought here. [1] The Court should deny Logan's motion.

## II.     Factual Background

A.  <u>Logan's allegations and claim for IIED</u>

Logan alleges defendants caused his wrongful incarceration for the 1997 murder of Timothy Jones. (*See* Dkt. 57, Pl.'s Am. Compl. ¶ 1, Aug. 29, 2024.) Logan spent nearly 23 years in prison for that crime. (*Id.*)

"Logan now seeks justice for the harm that Defendants caused and redress for the loss of liberty and hardship that he endured and continues to suffer as a result of Defendants' actions." (Dkt. 57 ¶ 10.) Logan alleges he endured inhumane

---

[1] Sinson received Logan's inmate phone call logs and list of approved callers this week. These records are currently under review, and Sinson reserves the right to request certain recorded telephone calls.

conditions and "human rights abuses" over more than two decades. (*Id*. ¶¶ 136-37.) Logan's incarceration "forced him into world of isolation in which he lost contact with many of his friends and family in the outside world." (Dkt. 57 ¶ 139.) "Logan lived in constant emotional anguish" and "suffered tremendous damage, including . . . psychological trauma, and emotional damages . . ." (*Id*. ¶¶ 143-44.)

Logan asserts a claim of intentional infliction of emotional distress ("IIED"). (Dkt. 57 ¶¶ 203-07.) Logan alleges the IIED led to "great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries . . ." (*Id*. ¶ 207.)

B.  Defendant Rowan's interrogatory #23 and the Court's prior ruling

This Court ordered the parties to submit any written discovery disputes in a joint status report ("JSR"). On February 14, 2025, the parties filed that JSR and one of the issues raised was Logan's answer to Defendant Rowan's interrogatory #23. (Dkt. 86 at 7-9.) The interrogatory asked Logan to identify criminal activity he has engaged in since his conviction for the Jones murder was vacated. (*Id*. at 7.) Logan answered that he was "convicted of drug offense in Iowa in 2023." (*Id*.) Defendants asked Logan to supplement his answer with more information stating it was relevant to his damages. (Dkt. 86 at 7-8.) Logan declined to do so.

On June 2, 2025, the Court heard arguments on the JSR. (Dkt. 101.) When the Court turned to interrogatory #23, it asked defense counsel: "how are [Logan's] criminal activities related to the claim of emotional distress? Can you be more specific . . . ?" (*Id*. at 20:17-19.) Ultimately, the Court did not "see the need to burden Mr. Logan with having to answer [this] interrogatory . . ." (*Id*. at 23:2-8.)

3

The Court also reasoned that asking Logan about this post-conviction life would be "more appropriate" for his deposition, "[a]nd perhaps at that point a link can be established[,]" between Logan's alleged damages and his subsequent criminal activity. (*Id*. at 23:9-15.)

C.  Logan's 2023 felony convictions and Sinson's related subpoenas

Defendants learned in February 2026 that Logan's "drug offense in Iowa" involved multiple felony convictions and a 20-year sentence. Logan produced filings from his Iowa criminal case on March 13, 2026.

These records show that on August 3, 2023, Logan pled guilty to three felonies related to his arrest on February 1, 2023: i) possession of a controlled substance with intent to deliver; ii) tax stamp violation; and iii) felon in possession of a firearm. (Ex. 1, Order.) Logan received a 20-year sentence as part of the plea agreement. (*Id*. at 2.)

Logan has since made several attempts to get released from prison. In a motion for sentencing reconsideration, Logan represented that he "manages serious health concerns, including . . . chronic anxiety." (Ex. 2, Mot. at 6; *see also* Ex. 3, R2R letter, July 31, 2025.)[2] The Iowa Parole Board denied his most recent attempt for early release on February 11, 2026. (Ex. 4, Parole Denial.)

With this new information, Sinson prepared subpoenas to the following entities: i) Des Moines Police Department ("DMPD"); ii) Iowa Board of Parole; iii)

---

[2] The letter is signed by Thommy Purnell who, according to Plaintiff's counsel's website, is "an essential member of Loevy + Loevy's litigation team." https://www.loevy.com/staff/thommy-purnell/. Road 2 Reentry is located in the same office as Loevy + Loevy.

Iowa Methodist Medical Center;[3] iv) Mt. Pleasant Correctional Facility ("Mt. Pleasant"); and v) Polk County Jail ("Polk County"). (Ex. 5, Subpoenas, Mar. 23, 2026.) Logan's counsel objected based "on relevance, scope, and other grounds," and the parties met and conferred by telephone on March 24, 2026. (Ex. 6, Emails, at 1-2.) Logan's counsel withdrew their objections to the Iowa Board of Parole and Iowa Methodist Medical Center subpoenas as long as the latter was returnable to Logan's counsel for privilege review.

The parties continued to confer about the subpoenas to the DMPD, Mt. Pleasant, and Polk County, including by telephone on May 5 and 22. (Ex. 7, Emails at 1-2, 6.) Sinson agreed to strike several categories of documents originally requested in the subpoenas to Mt. Pleasant and Polk County, and Logan's counsel agreed to withdraw their objections to the inmate call and visitor logs.

Thus, the requests at issue are for records related to Logan's arrest on February 1, 2023, from DMPD, and the following categories of records from Mt. Pleasant and Polk County: i) disciplinary records; ii) housing records; iii) grievances; iv) non-privileged correspondence; v) gang intelligence files; and vi) commissary and inmate trust accounts. (*See e.g.*, Ex. 8, Revised Subpoena Rider.) Sinson served subpoenas to these entities with an instruction to collect and preserve the records, but not to produce them until the Court rules on Logan's Motion.

---

[3] Logan received emergent medical treatment the night of his arrest after he tried to evade the police leading to a high-speed pursuit and crash.

### III.    Argument

A.  <u>Sinson's subpoenas seek information that is relevant to Logan's alleged damages</u>

Logan's complaint alleges far-reaching and ongoing damages, including "psychological trauma," "emotional damages," "great mental anguish, humiliation, [and] degradation." Whether these allegations are true will be borne out in records and testimony about Logan's medical and mental treatment, as well as records that describe his day-to-day life, including his behavior and relationships with others. Given that Logan has spent most of his life since the Jones murder in prison—22 years in Illinois and 3 years in Iowa—many of the relevant records will be inmate records. This type of discovery is routine in reverse conviction cases and is well within the bounds of Rule 26.

#### i.    **Logan placed this discovery at issue**

Logan alleged a wide array of mental and emotional damages, and Sinson should be able to test the veracity of those allegations with documents that relate to his mental and emotional well-being. Logan's arrest and prison records are a key source for Logan's mental and emotional state.

"The scope of discovery under Federal Rule of Civil Procedure 26 is broad and liberal." *Flores v. Bd. of Trustees of Comm. College Dist. No. 508*, 2015 U.S. Dist. LEXIS 156371, at *7 (N.D. Ill. Nov. 19, 2015) (Kim, J.) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)). Courts in this District "have recognized that 'extensive intrusion into the affairs of both litigants and third parties is permissible and common in modern discovery, especially in a case . . . involving claims of emotional trauma . . .'" *In re Watts Coordinated Pretrial Proceedings*, 2020

6

U.S. Dist. LEXIS 237436, at *10 (N.D. Ill. Dec. 17, 2020) (quoting *Flores*, 2015 U.S. Dist. LEXIS 156371, at *10).

### a. Inmate records from Mt. Pleasant and Polk County

Disciplinary records. Logan is expected to argue to a jury that he has "a genuine commitment to redirect his life toward positive and productive goals," all the while he "manages serious health concerns, including . . . chronic anxiety . . ." (Ex. 3 at 1.) His inmate disciplinary records may suggest otherwise. For instance, they may show non-compliance, confrontations, or contraband trafficking. These records are necessary for a proper expert assessment, including one under Rule 35.

Logan may argue the information sought is contained in his medical or mental health records, which he agreed to produce, but much of that information is subjective and may be a product of malingering, as inmates may tell their treaters something to obtain medications or more favorable housing rather than for an actual need. An inmate's remarks to a medical professional may be undercut by how he acts with other inmates and correctional staff, information contained in non-medical records.

Housing Records. Logan's housing records will show whether he was single or double-celled, and whether he was placed in general population, protective custody, or a mental health section of the facility. Logan's placement bears on Logan's mental and emotional state, because if Logan claims he suffers daily from "chronic anxiety," then perhaps he requested, and received, housing accommodations. If he did not, and Logan remained in general population, then perhaps Logan's alleged "great mental anguish," and "chronic anxiety," are overblown or not true at all.

7

Grievances. Grievances Logan filed during his Iowa incarceration could reveal the actual sources of his claimed emotional distress. If Logan filed grievances related to conditions of confinement that caused him psychological harm, those records may demonstrate that a significant portion of his current emotional suffering is attributable to his Iowa experience rather than the decades-old wrongful conviction. The *Flores* court recognized that when "emotional injuries rise above mere humiliation and embarrassment," the defendant is entitled to explore "other potential stressors" in plaintiff's life. 2015 U.S. Dist. LEXIS 156371, at *8.

Non-privileged Correspondence. Correspondence records test whether the alleged wrongful conviction caused lasting isolation from loved ones. If Logan maintained regular correspondence during his Iowa incarceration, it suggests his post-release relationships were not as devastated as alleged. Also, like Logan's inmate grievances, he may have written prison staff seeking accommodations for his alleged conditions of confinement, providing an alternative cause of his alleged damages.

Gang intelligence files. Records showing that Logan is an active gang member who holds rank within the cell-house, or facilitates in passing contraband, or possesses gang literature or paraphernalia, would rebut Logan's claim that his rehabilitation efforts are genuine. These records may also suggest that Logan is not as isolated or anxious as he alleges. Additionally, Sinson will argue that Logan's murder of Jones was gang related. IDOC records corroborated Logan's membership in the Gangster Disciples, and his Iowa prison records may further corroborate it.

Commissary and inmate trust accounts. Trust account records (deposits and withdrawals) reveal the flow of money into and out of Logan's accounts during his Iowa incarceration. These records can show whether Logan had financial support from family, friends, or other sources, which is relevant to damages claims about isolation and broken relationships. If Logan received regular deposits from family members, it undercuts the narrative that his relationships and support networks were destroyed by the wrongful conviction.

### b. Arrest records from DMPD

Logan's complaint claims he "continues to suffer" from "psychological trauma, and emotional damages" resulting from the wrongful conviction of the Jones murder. The 2023 arrest, multiple felony convictions, and 20-year sentence provide a competing causal explanation for Logan's alleged damages.

Additionally, under *Cobige v. City of Chi.*, 651 F.3d 780, 784 (7th Cir. 2011), the defense is entitled to present evidence that Logan's "character and life prospects" were shaped by factors other than defendants' conduct. Logan alleges he was deprived of the ability to pursue a career and the freedom to live his "life as an autonomous human being." Multiple felony convictions for drug and gun crimes— occurring shortly before the instant complaint was filed—undercut the argument that Logan's post-release difficulties are solely traceable to the alleged wrongful conviction.

In sum, the records requested by Sinson are relevant to rebut Logan's expected trial narrative that he is genuine in his pursuit of rehabilitation, and further rebut his alleged emotional and psychological damages.

9

**ii.** **The cases Logan relies on are easily distinguishable**

Logan contends that courts in this District routinely reject requests for arrest and inmate records other than those underpinning the alleged wrongful conviction (dkt. 151 at 8-9), but the cases Logan cites involve requests for a *non-party's* arrest and inmate records, or recorded prison calls, or sometimes both.

*Simon v. Nw. Univ.*, No. 1:15-CV-1433, 2017 U.S. Dist. LEXIS 2461, at *1 (N.D. Ill. Jan. 6, 2017): plaintiff in a reverse conviction case moved to quash defendant's subpoena for 15-years' worth of the plaintiff's IDOC recorded calls. The court modified the subpoena to require the production of calls between the plaintiff and his counsel and investigators, but denied the request for other calls, without prejudice, should the defendant learn more in discovery to support those requests. *Id.* *17.

*DeLeon-Reyes v. Guevara*, No. 1:18-cv-01028, 2020 U.S. Dist. LEXIS 225808, at *5 (N.D. Ill. Dec. 2, 2020): defendants subpoenaed IDOC for non-party Marilyn Mulero's recorded calls while she was incarcerated in the same facility as a fact witness, Adriana Mejia. The court found the subpoena "unenforceable at this time," but left open the possibility depending on Mejia's deposition testimony. *Id.* at *21.

*Treadwell v. Salgado*, No. 19 CV 3179, 2021 U.S. Dist. LEXIS 268533, at *3 (N.D. Ill. Dec. 14, 2021): defendants issued a subpoena that "broadly requested all IDOC and CCDOC records related to third-party witnesses including, . . . their recorded phone calls." Plaintiff and third-party witnesses moved to quash the subpoenas with respect to the phone call recordings, which the court granted since

10

the non-party witnesses' telephone calls were a "tangential issue . . .," only involving their credibility as Rule 404(b) witnesses. *Id.* at *12.

*Gillespie v. Boudreau*, No. 24 CV 8019 (N.D. Ill. July 23, 2025): plaintiff moved to bar defendants' subpoenas to CCDOC and IDOC for records of seven non-parties charged with the same murder as the plaintiff. (Dkt. 151-6 at 3.) The court denied plaintiff's motion for a protective order, and further ordered the parties to "meet and confer to narrow the document requests." (*Id.* at 1.)

*McClendon v. City of Chi.*, 345 F.R.D. 322, 324 (N.D. Ill. 2024): defendants served subpoenas seeking plaintiff and a non-party witness's recorded inmate calls with each other and other individuals. The court granted the motion to quash in part and denied in part, allowing some discovery related to the recorded inmate calls. *See*, *Id.* at 328.

The subpoenas at issue in *Simon*, *DeLeon*, *Treadwell*, and *McClendon* all involved requests for recorded inmate calls, which are scrutinized differently given their privacy implications. Because Sinson does not seek recorded calls, nor is he seeking inmate records of non-parties, the cases Logan cites do not apply.

B. Logan fails to establish "good cause" under Rule 26

Logan argues Sinson's subpoenas "impose substantial burdens and invade significant privacy interests . . ." (Dkt. 151 at 11.) Yet, Logan provides no details, facts, or examples articulating the alleged burdens or privacy interests at stake.

Rule 26(c) states that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . ." The party seeking a protective order bears the burden of

showing "good cause by submitting 'a particular and specific demonstration of fact.'" *Flores*, 2015 U.S. Dist. LEXIS 156371, at *7 (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning are insufficient." *Id.* "In deciding whether good cause exists, the court must balance the competing interests of the parties involved." *Id.*

In conclusory fashion, Logan contends the "requests would require non-parties to collect and produce years of records while simultaneously exposing highly sensitive personal information . . ." But Logan does not attach any statement from the subpoenaed entities, nor are his 2023 arrest and incarceration expected to produce a volume of records the non-parties cannot handle.

It is also difficult to see how the records Sinson seeks are "expansive," considering similar categories of Logan's inmate records were already produced by IDOC for the 22-plus years Logan was incarcerated for the Jones murder. Defendants subpoenaed IDOC for Logan's "master file," which includes many different types of inmate records, all of which were produced, totaling 1,675 pages. Those records were sought and produced for the same reason here: Logan's alleged damages. Sinson's requests to Mt. Pleasant and Polk County are even narrower than the IDOC subpoena as he struck several categories of documents in an effort to compromise, and the requests cover a span of 3 years, unlike the 22 years asked of IDOC.

Logan's privacy intrusion argument must likewise fail. *First*, the arrest records are discoverable to anyone under FOIA. *Second*, Logan conceded any alleged privacy protections when he filed this civil lawsuit alleging Sinson, and the co-defendants, intentionally inflicted emotional distress causing him great mental anguish and emotional distress.

Logan is also silent about what information he wants to remain confidential. Even if some personal information exists, this level of intrusion is common where, as here, plaintiff places his character and emotional state at issue.

Logan seeks substantial compensatory and punitive damages, making Sinson's request for records related to Logan's February 1, 2023, arrest and three years of inmate records proportional under Rule 26.

C. <u>This Court's prior ruling did not bar Sinson from seeking these records.</u>

Logan argues Sinson's subpoenas are an attempt to sidestep this Court's ruling that Logan need not supplement an interrogatory answer about his post-release criminal activity. Logan overstates the Court's prior ruling, and Sinson's requests are based on facts that Logan did not disclose when the order was entered.

The Court's order that Logan believes bars Sinson's subpoenas concerned Defendant Rowan's interrogatory #23 to Logan, which asked Logan to identify all criminal activity he has engaged in since his murder conviction was vacated. Logan answered saying he was "convicted of a drug offense in Iowa in 2023." He did not mention he was also convicted of illegally possessing a weapon or that he was arrested, convicted, and imprisoned under an *alias*, Keith Williams, or that he was sentenced to 20 years. Because Logan did not disclose the full scope of his Iowa

13

convictions, Defendants could not fully develop their damages argument, and the Court may well have ruled differently had it known.

Logan's "drug offense in Iowa" is significant. The Iowa arrest and subsequent incarceration may have caused or contributed to his alleged physical, mental, or emotional state. Moreover, the requested records may rebut Logan's other allegations about damages to familial relationships or life prospects, as well as his expected trial narrative that he is committed to "redirect his life toward positive and productive goals." There is now sufficient information to permit this discovery.

## IV.    Conclusion

WHEREFORE, Sinson requests the Court enter an order denying Logan's Motion, (dkt. 151), and for any other relief this Court deems just and reasonable.

Date: June 26, 2026                                  Respectfully,


/s/ *Michael Stephenson*
*Counsel for Defendant Sinson*

James L. Lydon
Michael C. Stephenson
Matthew R. Howroyd
Hinshaw & Culbertson, LLP
151 N. Franklin St., Ste. 2500
Chicago, IL 60606
(312) 704-3000
jlydon@hinshawlaw.com
mstephenson@hinshawlaw.com
mhowroyd@hinshawlaw.com

14

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 26, 2026, the foregoing document was filed with the Clerk of Court for the United States District Court for the Northern District of Illinois via the CM/ECF system.

*/s/ Michael C. Stephenson*